language must come from that body and not the courts.

Order affirmed.

Peter P.C. PISNANONT, M.D., Petitioner,

v.

**STATE BOARD OF MEDICINE,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 16, 1996.
Decided July 12, 1996.
Reargument Denied Aug. 29, 1996.

John G. DiLeonardo, for Petitioner.

April L. McClaine, for Respondent.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Peter P.C. Pisnanont, M.D. (Petitioner) petitions for review of a decision of the State Board of Medicine (Board) affirming an order of a hearing examiner that imposed a six-month suspension of Petitioner's license to practice medicine and modifying the order by adding a requirement that, at the end of the period of suspension, Petitioner should provide to the Board a report by a psychiatrist approved by the Board who has conducted a mental/physical examination of Petitioner, indicating that he is currently competent to resume the practice of medicine. The questions presented are whether the Board's actions are barred in whole or in part by

impermissible commingling of prosecutorial and adjudicatory functions; whether the Board erred in failing to conduct Petitioner's hearing in a fair and impartial manner; and whether the Board violated Petitioner's rights to due process under the state and federal constitutions by failing to provide adequate notice and an opportunity to Petitioner to defend himself as to all of the charges upon which the disciplinary action was based.

## I

The Board issued an order to show cause to Petitioner directing him to respond to allegations that the New York medical licensing authority had issued a determination and order finding that Petitioner had submitted falsified information to employers or potential employers and had diverted valium for his own use.[1] The New York authority ordered a one-year suspension of Petitioner's license. In view of Petitioner's 20–year unblemished medical career, the professional and personal circumstances giving rise to his conduct and the lack of any impact on patient care, the authority ordered the suspension stayed in its entirety and ordered that Petitioner continue to be counseled by the Committee on Physicians' Health.

Paragraph 7 of the order to show cause stated: "Based upon the foregoing, Respondent is subject to disciplinary action or corrective measures by the Board pursuant to 63 P.S. § 422.41(4) based on the New York reciprocal disciplinary action." Section 41 of the Medical Practice Act of 1985 (Act), Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.41, enumerates the reasons for which the Board shall have authority to impose disciplinary measures upon a board-regulated practitioner, including:

(4) Having a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended by a proper licensing authority of another state, territory, possession or country, or a branch of the Federal Government.

Petitioner represented himself before the hearing examiner and the Board. His answer to the order to show cause did not dispute the existence or validity of the New York action; however, it included voluminous matter relating to Petitioner's belief that he actually earned certification by the American Board of Internal Medicine (ABIM) many years ago, but his former superior and mentor withheld the certificate from him. He also asserted that the ABIM's failure to grant him certification although he took the examination 19 times was due to a conspiracy against him. This material included copies of correspondence with members of the ABIM, in which Petitioner addressed at least one of them as "Daddy" and pleaded for intervention to have his certification sent to him, to which the ABIM members responded by explaining their lack of power to grant a certification absent successful completion of the examination and by advising Petitioner to seek professional mental health treatment. Petitioner characterized this evidence as relating to his "primary" problem, to which his conduct leading to the discipline was "secondary." Petitioner pursued this point at the hearing, over the admonishment of the hearing examiner not to offer evidence not relevant to the allegations under consideration.

The hearing examiner's adjudication expressly noted that the proceeding was based exclusively on the New York disciplinary action pursuant to Section 41(4) of the Act. Although the evidence of Petitioner's single-minded pursuit of certification raised questions about his competence, the hearing examiner stated that due process requires notice to a physician that includes a sufficient listing and explanation of charges and noted that the Board was not without resources to proceed against Petitioner under the appropriate provisions. The Board, without receiving additional evidence, concluded that the record established probable cause for it to believe that Petitioner is unable to practice with reasonable skill and safety due to mental illness. The Board also concluded:

---

1. The order to show cause noted that Petitioner's Pennsylvania license had expired in 1976 but that it was subject to renewal upon filing of appropriate documentation and fees.

"The Board is authorized to compel Respondent to submit to a medical/physical examination by a Board-approved psychiatrist. (Section 41(5) of the MPA, 63 P.S. § 422.41(5); Conclusion of Law No. 4)." Board's Decision, Conclusion of Law No. 5.

Section 41(5) provides as a basis for disciplinary or corrective action "[b]eing unable to practice the profession with reasonable skill and safety to patients by reason of illness ... or if [the licensee] is or shall become mentally incompetent." Section 41(5) further provides: "In enforcing this paragraph, the board shall, upon probable cause, have authority to compel a practitioner to submit to a mental or physical examination by a physician or a psychologist approved by the board." The Board imposed the psychiatric examination requirement at issue here, and Petitioner, now represented by counsel, seeks review.[2]

## II

Petitioner raises due process challenges to the Board's imposition of the psychiatric examination requirement.[3] Among his interrelated challenges, Petitioner argues that he was deprived of the due process requirement of notice of the charges against him so as to provide him with a meaningful opportunity to defend himself. The order to show cause listed only Section 41(4) of the Act as the basis for the proceeding. Further, the hearing examiner informed the Petitioner that matters relating to his problems with the ABIM were not relevant to the proceeding, and counsel for the Board expressly agreed on the record. In *Pennsylvania Social Services Union, Local 668, SEIU v. Department of Labor and Industry, Bureau of Workers' Compensation*, 105 Pa. Cmwlth. 264, 524 A.2d 1005, 1008 (1987), this Court stated: "Due process requires that notice to a party in administrative proceedings must at least contain a sufficient listing and explanation of any charges so that the individual involved can know against what charges he must defend himself."

The Board responds that Petitioner received a fair hearing pursuant to proper no-

2. The scope of this Court's review of a decision of the Board is limited to determining whether necessary findings of fact are supported by substantial evidence in the record and whether there was an error of law or a constitutional violation. *Barran v. State Board of Medicine*, 670 A.2d 765 (Pa.Cmwlth.1996).

3. The Board contends that Petitioner is precluded from raising any issue with respect to procedural due process on appeal because he failed to raise any such issue before the Board, citing *McGrath v. State Board of Dentistry*, 159 Pa. Cmwlth. 159, 632 A.2d 1027 (1993). The Supreme Court's decision in *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), addressing the issue of impermissible commingling of prosecutorial and adjudicatory functions, was issued after the hearing in that case but before the issuance of the adjudication. This Court held that the petitioner's failure to raise such an issue while his case was pending before the Board precluded him from raising the issue for the first time on appeal. Petitioner argues that the nature of his due process claims is such that he could not be aware of them and raise them until after the Board's adjudication. The Board implicitly concedes this point but asserts that Petitioner was represented by counsel immediately following the issuance of the Board's adjudication and notes that he could have sought reconsideration pursuant to 1 Pa.Code § 35.241 of the General Rules of Administrative Practice and Procedure.

The present case may be distinguished from *McGrath* in that Petitioner could not have been aware of his due process claims while his case was pending before the Board. The issues Petitioner raises did not arise until the Board issued its final, appealable order. Although 1 Pa.Code § 35.241(a) provides that "[a]n application for rehearing or reconsideration *may* be filed by a party to a proceeding within 15 days" (emphasis added), such application is not mandatory in order to preserve issues for appeal, as is the case, for example, with the requirement of a motion for post-trial relief in regard to procedures governed by Pa. R.C.P. No. 227.1. In a similar situation, this Court has considered the merits of a due process issue raised for the first time on appeal. In *Dowler v. Public School Employes' Retirement Board*, 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993), the Court deemed waived under Pa. R.A.P. 1551(a)(3) an assertion of commingling of functions that with due diligence could have been raised before the agency, but the Court considered the merits of an assertion of denial of due process based on alleged failure of the agency to review the entire record. That contention was based on references in the text of the agency's order as to its review of the record, and the Court concluded that the contention could not have been raised before the agency because the only proof of the argument derived from the agency's final order. Accordingly, Petitioner's issues are not waived.

tice. The Board asserts that because Petitioner was neither charged under nor found to have violated the mental illness provisions of the Act, there was no requirement for notice to him on this point. In imposing the psychiatric examination requirement, the Board asserts that it was simply fashioning a sanction appropriate to the evidence before it. Despite the express reliance upon Section 41(5) of the Act in the Board's opinion, it now argues that the better authority for its action is Section 42, 63 P.S. § 422.42, relating to types of corrective action, and that the reference to Section 41(5), if inappropriate, is harmless error.

Section 42(a) enumerates disciplinary or corrective actions that the Board is empowered to take against a practitioner, including: "(4) Requir[ing] the board-regulated practitioner to submit to the care, counseling or treatment of a physician or a psychologist designated by the board." The Board asserts that it would have acted contrary to its responsibility to health care consumers had it ignored the evidence of delusional thinking that Petitioner presented in response to a charge of reciprocal discipline and that Petitioner would be afforded no additional procedural protection by a new charging document and a new hearing.

■ The Court concludes that the Board violated Petitioner's right to due process as articulated in the Act. First, the Court notes that the Board's power to compel a practitioner to submit to a psychiatric examination appears only in Section 41(5) of the Act and that it is expressly limited by the phrase "[i]n enforcing this paragraph." The power to order such an examination does not appear in any other paragraph enumerating a basis for discipline or corrective action. Under the maxim *expressio unius est exclusio alterius,* the omission of mention of power to compel an examination in regard to the other paragraphs indicates that it does not apply to them. *See Concerned Citizens for Better Schools v. Brownsville Area School District,* 660 A.2d 668 (Pa.Cmwlth.1995).

Further, the Court observes that Section 42(a)(4), which is among the generally authorized powers of the Board, permits the Board to require counseling or treatment, but it does not by its own terms authorize a requirement of a psychiatric examination as a condition for reinstatement of a license. Thus the only source for such a requirement remains Section 41(5) of the Act. Therefore, when the Board imposed the requirement of the examination without, as it admits, any formal charge or notice to Petitioner concerning the basis for this sanction, it violated the principle set forth in *Pennsylvania Social Services Union* requiring notice and explanation of charges. In view of this conclusion, the Court need not address Petitioner's contention that the Board's action constituted an impermissible commingling of prosecutorial and adjudicatory functions. Accordingly, that portion of the Board's order requiring the examination must be vacated. This action is without prejudice to the power of the Board to institute further proceedings pursuant to its statutory authority, so long as the Board provides Petitioner proper notice of charges and opportunity to defend against them.

### ORDER

AND NOW, this day of 12th day of July, 1996, the order of the State Board of Medicine is vacated to the extent that it imposed a psychiatric examination as a condition of reinstatement of Petitioner's license following the period of suspension.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The issue before us is whether the State Board of Medicine, (Board) when it suspended the medical license of Peter P.C. Pisnanont, M.D., (Petitioner) violated his due process right to notice of the charges by requiring him to submit to a mental/physical examination before resuming practice.

The majority holds that the Board is not authorized to require a psychiatric examination without a formal charge or notice concerning the basis of the sanction and, therefore, the Board violated his due process rights. I disagree because under Section 42(a)(4) of the Medical Practice Act of 1985

(Act),[1] the provision authorizing the Board to order remedial action and impose sanctions, when a medical practitioner is notified that the Board is considering disciplinary action included within that notice, is that any appropriate sanction or sanctions provided in the Act can be imposed, including requiring the submission to physical or mental treatment.

Petitioner was charged through an order to show cause with having his license suspended in another state. Section 41(4) of the Act, 63 P.S. § 422.41(4).[2] At the hearing on this charge before the Board, the Board established through documentary evidence that Petitioner's license was suspended in New York for one year due to charges of forgery and diverting prescription drugs for his own use. Petitioner's defense consisted mainly of his testimony about a "conspiracy" against him concerning his certification in what the Board considered delusional and obsessive thinking.

The Board concluded that Petitioner was subject to disciplinary action in this state due to the disciplinary action taken against his license in New York and it suspended his medical license for six months. In addition, the Board concluded that due to the evidence presented by him, it had probable cause to believe Petitioner was unable to practice medicine by reason of a mental illness and ordered that, before his license would be

returned, Petitioner must provide evidence of his competency, including a report by a psychiatrist who conducted a mental/physical examination. (Reproduced Record 8).[3]

The Board has authority to impose appropriate sanctions under Section 42(a) of the Act, 63 P.S. § 442.42(a), which provides, in pertinent part:

> *Authorized actions.*—When the board is empowered to take disciplinary or corrective action against a board-regulated practitioner under the provisions of this act or pursuant to other statutory authority, the board may:
>
> . . .
>
> (3) Revoke, suspend, limit or otherwise restrict a license or certificate.
>
> (4) *Require the board-regulated practitioner to submit to the care, counseling or treatment of a physician or a psychologist designated by the board.*
>
> . . .

(Emphasis added). The statutory language indicates that when the Board finds that any of the reasons for corrective action are established, it can, in its discretion,[4] take any of the measures or impose any of the sanctions listed. One of those measures is the required submission to "care, counseling or treatment of a physician".

The majority holds that this section does not authorize a requirement for a psychiatric

---

1. Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 42(a)(4).

2. Section 41 of the Act provides:

   The board shall have authority to impose disciplinary or corrective measures on a board-regulated practitioner for any or all of the following reasons:

   . . .

   (4) Having a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended by a proper licensing authority of another state, territory, possession or country, or a branch of the Federal Government.

3. The Board initially relied on its authority in Section 41(5) of the Act to order a mental/physical examination; however, in its brief, it admitted that section did not apply and asserted authority solely under Section 42(a) of the Act. We

agree with the majority that Section 41(5) of the Act does not permit the Board's imposition of a mental examination because it is applicable only when a medical licensee is charged with being unable to practice the profession with reasonable skill and safety to patients by reason of illness, addiction to drugs or alcohol or a conviction related to a controlled substance.

4. The purpose of the Act is to regulate the practice of medicine in order to safeguard the public health and welfare. *Johnston v. Commonwealth, State Board of Medical Education and Licensure*, 49 Pa.Cmwlth. 9, 410 A.2d 103 (1980).

   The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. *Id.* 410 A.2d at 105, quoting *Dent v. West Virginia*, 129 U.S. 114, 122, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889).

examination as a condition for reinstatement of a license. Unlike the majority, I believe that an examination is a necessary part of and included within the authorization for the Board to "[r]equire the [physician] to submit to the care, counseling or treatment of a physician".

There is no dispute that Petitioner was given reasonable notice of the charges and that he was subject to disciplinary action. Due process does not require that Petitioner be notified of all the possible sanctions that could be imposed if the charges are proven against him. In contrast to the majority, I would hold that Petitioner received adequate notice of the charge against him and that his due process rights were not violated.