Justice CAPPY joins this concurring and dissenting opinion.

**Frank Wohlsein TELANG, M.D.,**

v.

**COMMONWEALTH of Pennsylvania BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS.**

**Appeal of State Board of Medicine.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1999.

Decided May 18, 2000.

---

**5.** I should also note that, even if I could agree that the Fifth Amendment requires a procedural rule along the lines fashioned by the Majority, the Majority's rule provides insufficient guidance. For example, the rule does not provide a point certain by which the de-

fendant must announce his intention: i.e., before the penalty phase begins, after the Commonwealth has rested in that phase, before the defendant calls his mental health expert, or at some other, unspecified time.

Paul A. Tufano, General Counsel, Office of General Counsel, Robert J. DeSousa, Chief Counsel, Gerald S. Smith, Counsel, Dept. of State, for State Bd. of Medicine.

David R. Dearden, Kalogredis, Tsoules and Sweeney, Ltd., Wayne, for Frank Wohlsein Telang, M.D.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

NIGRO, Justice.

The issue before this Court is whether the Commonwealth Court abused its discretion and misapplied statutory and common law in mandating additional notice and a *second* administrative hearing. Since we find that notice and an opportunity to be heard on the question of sanction had already been provided to the physician facing disciplinary charges, we reverse.

Frank Wohlsein Telang, M.D. (Telang) was licensed to practice medicine in Pennsylvania and New Jersey until February 1996, when New Jersey's Board of Medicine suspended his New Jersey license pursuant to a finding that Telang sexually abused one of his patients during the

course of her treatment.[1] As a result of New Jersey's action, the Pennsylvania Bureau of Professional and Occupational Affairs petitioned the Pennsylvania State Board of Medicine (Medical Board) to suspend Telang's Pennsylvania license, recommending a minimum three-year suspension. Pursuant to § 40(a) of the Medical Practice Act, Act of December 20, 1985, P.L. 457, No. 112, *as amended,* 63 P.S. §§ 422.1 *et seq.,* the Medical Board immediately suspended Telang's license pending a formal hearing, determining that he posed a clear and immediate danger to the public health and safety. An Order to Show Cause was filed by the Commonwealth on July 31, 1996, charging Telang with one count of violating the Medical Practice Act.[2]

A formal administrative hearing was held on October 28, 1996. At the hearing, Telang, who was present and represented by counsel, admitted that his license had been suspended by New Jersey and that he had been in psychotherapy for his sexual boundaries problem since April 1996. The Hearing Examiner heard testimony from Telang and from his treating psycho-

therapist, Julian W. Slowinski (Slowinski). At the conclusion of the hearing, the Hearing Examiner ordered that Telang's license be suspended for at least three years, at which point he would be permitted to apply for reinstatement based on his personal rehabilitation and a showing that he did not pose a substantial risk of harm to the health and safety of his patients. Hearing Examiner's Order, Nov. 21, 1996.

Telang filed an Application for Review by the Medical Board[3] seeking a lesser sanction.[4] The Medical Board adopted the findings of fact of the Hearing Examiner. On reviewing the sanction imposed, however, the Medical Board found Telang's conduct "a deplorable violation of patient rights and medical ethics," maintaining that "even a single incidence of sexual abuse of a patient warrants a stringent sanction so that the greatest protection to the public available to the Board is afforded and so that integrity of the profession is maintained." Medical Board Adjudication at 4–5. Determining that suspension was too lenient, the Medical Board revoked Telang's Pennsylvania license.[5] Thereaf-

---

1. Telang, a neurologist, was treating a patient for muscle spasms in the neck and back when he "removed [her] gown, fondled and massaged her breasts, massaged her vagina, kissed her head and lay on top of her on the examination table ... moving his body up *and down as if in a sexual manner."* Hearing Examiner's Findings of Fact # 9. Telang committed the same conduct with the same patient on two occasions, the second having been recorded on videotape by the patient pursuant to police instructions. Hearing Examiner's Report at 6.

2. The basis on which charges were brought against Telang was the following provision of the Medical Practice Act:

   The Board shall have the authority to impose disciplinary or corrective measures on a board-regulated practitioner for any or all of the following reasons:

   (4) *Having a license* or other authorization to practice the profession *revoked or suspended* or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended *by a proper licensing authority of another state,* territory, pos-

session or country, or a branch of the Federal government.
   63 P.S. § 422.41(4)(emphasis added).

3. Section 905(a) of the Health Care Services Malpractice Act (HCSMA), 40 P.S. § 1301.905(a) provides in pertinent part:

   **§ 1301.905. Review by state licensing boards**
   (a) If application for review is made to the State Board of Medical Education and Licensure ... within 20 days from the date of any decision made as a result of a hearing held by a hearing examiner, the State Board of Medical Licensure ... shall review the evidence, and if deemed advisable by the board, hear argument and additional evidence.
   40 P.S. § 1301.905(a).

4. Telang argued that he should be allowed to continue to practice medicine in Pennsylvania but under constant supervision.

5. When a Pennsylvania medical license is revoked, the physician must wait five years before applying for reinstatement. Medical Practice Act, 63 P.S. § 422.43.

ter Telang requested reconsideration and a hearing on the issue of revocation, which the Medical Board denied.

■ Telang appealed to the Commonwealth Court, which reversed the order of the Medical Board, finding that the Medical Board violated Telang's constitutional right to procedural due process by *sua sponte* imposing a harsher punishment than that ordered by the Hearing Examiner without giving Telang notice that such a sanction might be contemplated and without affording him an additional opportunity to present evidence with regard to a revocation penalty.[6] We disagree and therefore reverse the Commonwealth Court and reinstate the adjudication and order of the Medical Board.

■ Here, Telang asserts that he has a property interest in his medical license and must therefore, pursuant to the United States Constitution, be afforded procedural due process before that license can be taken away from him. U.S. Const. amend. XIV, § 1. In order to afford Telang his constitutional rights, the Commonwealth Court determined that Telang was entitled to additional notice specifying that the Medical Board was considering a harsher sanction, and to a second evidentiary hearing in order to present evidence with respect to revocation of his license. We agree that Telang has a property right in his medical license and that he must be afforded procedural due process in adjudicating any administrative charges against him. *Lyness v. Commonwealth, State Bd. of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). We nonetheless find that he was afforded the full procedural process due him before the Medical Board's sanction was imposed.

■ Due process requires that a physician be given notice of the charges

against him and an opportunity to be heard. Administrative Law and Procedure, 2 Pa.C.S. §§ 501 *et seq.;* Medical Practice Act, 63 P.S. §§ 422.1–422.45; HCSMA, 40 P.S. §§ 1301.901–1301.907; *Lyness,* 529 Pa. at 542, 605 A.2d at 1207. It is commonly understood that " 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In other words, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.; see also Pennsylvania Coal Mining Ass'n v. Ins. Dep't,* 471 Pa. 437, 449, 370 A.2d 685, 691 (1977).

*Mathews* presents three distinct factors to consider in examining the adequacy of procedural due process under the Fourteenth Amendment. The first factor looks at the private interest that will be affected by official action. The second assesses the risk of erroneous deprivation of such interest through the procedures actually used and examines the value, if any, of additional or different procedural safeguards. The third examines the government's interest, including any fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

With this in mind, the Commonwealth Court properly looked to *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and its progeny for guidance on the requirements to satisfy procedural due process in specific instances. However, we believe the court improperly analyzed the instant circumstances according to the *Mathews* guidelines.

---

**6.** The Commonwealth Court's standard of review of a decision of an administrative board encompasses whether constitutional rights were violated, whether an error of law was committed or whether findings of fact are supported by substantial evidence. *Pisnanont*

*v. State Bd. of Medicine,* 680 A.2d 911 (Pa. Commw.1996). The Medical Board's alleged violation of Telang's constitutional right to procedural due process is the sole basis for the Commonwealth Court's reversal.

Here, it is undisputed that Telang has a substantial property interest in his medical license and that the Commonwealth may not deprive him of that license without adequate due process. *Lyness,* 529 Pa. at 542, 605 A.2d at 1208. Thus, the parties do not dispute the first factor of *Mathews.*

■ The second factor requires that we assess the risk that Telang, without further due process, may have been erroneously deprived of his license. The Commonwealth Court characterizes Telang as "blindsided" by the Medical Board's ruling because he had "no indication at any time before the Board issued its order that it contemplated a harsher sanction." *Telang v. Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs,* 714 A.2d 1109, 1112 (Pa. Commw.1998). We disagree.

On July 31, 1996, Telang was served Notice stating "[a] formal administrative disciplinary action has been filed against you." The first several lines of the document announces, in capital, underlined letters:

YOU MAY LOSE LICENSES, CERTIFICATES, REGISTRATIONS OR PERMITS WHICH MAY BE IMPORTANT TO YOUR PRACTICE OF YOUR PROFESSION, TRADE OR OCCUPATION

*Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs v. Telang,* Notice, July 31, 1996, at Dkt. No. 0602–49–96 (emphasis in original).

Attached to the Notice was the Order to Show Cause, which advised him:

If the Board finds the Factual Allegations to be true and correct, and determines that the [physician] violated the Act, *the Board may, in its discretion, impose one or more of the following penalties: The revocation,* suspension or other restriction *of any licenses,* certifications, registrations, permits or other authorizations *to practice a profession* held by the [physician] in the Commonwealth of Pennsylvania, or the imposi-

tion of any other disciplinary or corrective action which the Act authorizes the Board to impose.

Order to Show Cause at Dkt. No. 0602–49–96, July 31, 1996 at 3 (emphasis added). *See also* Medical Practice Act, 63 P.S. § 422.42.

Thus, before appearing before the Hearing Examiner, Telang knew that license revocation was clearly a possibility and that the Medical Board, as the final adjudicator, could impose such a penalty. Furthermore, § 422.41 of the Medical Practice Act, under which Telang was charged, is captioned "Reasons for refusal, *revocation,* suspension and other corrective actions against a licensee or certificate holder." 63 P.S. § 422.41 (emphasis added). The implication is that for *any* of the infractions listed under § 422.41, the sanctions enumerated were available.

The record of proceedings before the Hearing Examiner belies the Commonwealth Court's finding that Telang was not afforded an opportunity to present evidence or argue against revocation. At the evidentiary hearing, Telang was represented by counsel and testified on his own behalf, admitting that his New Jersey license had been suspended. Telang further admitted his problem with sexual boundaries, acknowledging that he was in therapy because of it. Therefore, the basis on which disciplinary action could be taken was uncontested. Telang also had the opportunity to present witnesses, and chose his treating psychotherapist to testify as an expert witness. With regard to the sanction to be imposed, both Telang and his expert testified as to mitigating factors to be considered. Slowinski recommended that, rather than suspend Telang, he be allowed to continue practicing while undergoing therapy but that he be constantly monitored when seeing patients. In addition, Slowinski recommended regular reporting and patient feedback on Telang. Finding that Slowinski's opinion was based in part on the unverified history from Telang himself that the abuse of rec-

ord against the New Jersey patient was Telang's only incident of misconduct, the Hearing Examiner decided that constant monitoring was inadequate, and imposed a minimum three-year suspension.[7] Telang appealed to the Medical Board.

The Medical Board determined, as is its prerogative, that additional evidence and argument was unwarranted because there was no factual dispute as to Telang's conduct, and nothing so complex or technical that the collective expertise of the Medical Board could not comprehend. HCSMA, 40 P.S. § 1301.905(a); Administrative Agency Law, 2 Pa.C.S. § 506. *See also Herberg v. State Bd. of Med. Educ. and Licensure*, 65 Pa.Cmwlth. 358, 442 A.2d 411, 414 (1982)(section 905 of HCSMA imposes no requirement that board hear additional evidence in reviewing hearing examiner's decision where record shows petitioner was given full opportunity to present evidence and legal arguments before hearing examiner). Thus, it was the sole task of the Medical Board to determine what sanction, including possible revocation, fit the offense, which the Medical Board had full and final statutory authority to do. 63 P.S. § 422.41(4). Based on the record, the Hearing Examiner herself could have properly revoked Telang's license. Simply because the Medical Board, and not the Hearing Examiner, revoked Telang's license does not warrant adding to the procedural due process already afforded Telang by giving him additional notice and a second hearing to argue his fitness to practice. We therefore find that, based

on uncontested facts, there was no risk of error in revoking Telang's license without a second notice and hearing.[8] As such, there was nothing that a second notice and/or hearing would remedy.

The third *Mathews* factor requires an examination of the nature of the government's interest in the matter and an assessment of additional administrative and fiscal burdens, if any, on the government to afford additional or different procedures. Here, the Commonwealth's interest is its obligation to protect the public from medical licensees who sexually assault their patients. In making its ruling, the Medical Board merely assessed the seriousness of Telang's offense differently than the Hearing Examiner did on the same undisputed facts. This is the Medical Board's prerogative. A second hearing would merely reiterate the facts already undisputed, duplicating the function of the Hearing Examiner and needlessly consuming time and resources. State Medical Board's Adjudication and Order, June 24, 1997 at 3 (adopting the findings of fact and conclusions of law of the Hearing Examiner). Moreover, at the hearing, Telang availed himself of ample opportunity to present evidence aimed at mitigating any allowable sanctions. Therefore, a second evidentiary hearing nets mere surplusage at the expense of an unwarranted duplication of the Hearing Examiner's efforts. We therefore find that, under a proper three-factor *Mathews* analysis, Telang was afforded due process rights commensurate with the circumstances of this case.[9]

7. Based on Slowinski's testimony, the Hearing Examiner found that "[w]hile [Telang] has been in therapy for six months, he still has a way to go before [he is aware of his need to monitor stress, to understand his behavior and to develop victim empathy]." Hearing Examiner Adjudication, October 28, 1996, at 8.

8. The Commonwealth Court admits that it "is not convinced that an evidentiary hearing would in all similar circumstances be warranted, for *due process does not require an evidentiary hearing in instances where no facts*

are at issue," *Telang*, 714 A.2d at 1112 n. 4 (citation omitted)(emphasis added). It nonetheless required it here.

9. Telang complains that while he was notified in the Order to Show Cause that all proceedings would be conducted in accordance with the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704; 63 P.S. §§ 2201–2207 and the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251, it was not until he received the Adjudication and Order of the Hearing Examiner that he was advised of the role of the HCSMA,

We therefore conclude that Telang was afforded full procedural due process from the outset, that his Fourteenth Amendment rights were not violated, and that the Commonwealth Court erred in mandating additional notice and a second evidentiary hearing to accommodate new arguments against revocation of Telang's license. We therefore reverse the Commonwealth Court Order and reinstate the Medical Board's Adjudication and Order.

40 P.S. § 1301.905. Telang therefore contests that his notice was not "clear, fair or precise." However, section 905 merely informed him of his right to petition for review to the Medical Board. Moreover, as Telang chose to avail himself of section 905 review to contest the sanction imposed by the Hearing Examiner he cannot now complain that he bargained only for a reduced sanction and not for the possibility of revocation.