**Louis Andre TELESFORD, M.D., Petitioner**

**v.**

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF MEDICINE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2006.

Decided Feb. 7, 2007.

Peter M. Good, Harrisburg, for petitioner.

Sabina I. Howell, Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Louis Andre Telesford, M.D., (Petitioner) petitions for review of the June 29, 2006, order of the Pennsylvania State Board of Medicine (Board) revoking Petitioner's license to practice medicine. We vacate and remand.

Petitioner is a physician licensed to practice medicine in Connecticut and Pennsylvania. In December 2002, Petitioner entered into a plea agreement with the United States Attorney for the District of Connecticut, in which Petitioner pled guilty to one count of conspiracy to distrib-

ute controlled substances in violation of 21 U.S.C. § 846. In the plea agreement, Petitioner acknowledged that he prescribed excessive quantities of Oxycontin, Percocet and Vicodin to several individuals, knowing that these persons were engaging in street-level resale of these controlled substances.[1] In August 2003, the United States District Court for the District of Connecticut sentenced Petitioner to a term of twelve months in prison, followed by five years probation, and a $10,000 fine. (R.R. at 31a.)

In September 2003, the Connecticut Medical Examining Board (Connecticut board) issued a consent order that: (1) suspended Petitioner's medical license for twelve months, to be followed by three

years probation; (2) set forth conditions for a provisional reinstatement; and (3) permanently restricted Petitioner's ability to prescribe controlled substances. (R.R. at 37a–38a.)

An Amended Order to Show Cause was filed by the Commonwealth of Pennsylvania, Department of State, in January 2005, alleging that Petitioner was subject to discipline under sections 41(3), (4) and (5) of the Medical Practice Act (Act)[2] and section 9124(c)(1) of the Criminal History Record Information Act.[3] Petitioner filed a timely answer, and a hearing on the matter was scheduled to be held in April 2005. The Commonwealth moved for a continuance on the basis that the parties had negotiated terms of a consent agreement

1. In the plea agreement, Petitioner stipulated to specific conduct, which may be summarized as follows. Sometime during the period between March 1999 and August 2001, Petitioner encountered significant financial problems. He requested a loan from Lucia Morgillo and Gregory Morgillo, patients that Petitioner initially treated for legitimate medical purposes. The Morgillos loaned Petitioner $25,000 in cash, and, for a period of time, Petitioner made monthly payments on the loan. However, eventually Petitioner became unable to make monthly payments. The Morgillos then presented Petitioner the option of reducing the debt he owed them by writing prescriptions for controlled substances, such as Oxycontin, Percocet and Vicodin, for the Morgillos and for others whom the Morgillos would refer to Petitioner for treatment. Petitioner agreed to this proposal, but he also made additional monthly payments on the debt.

In furtherance of the plan, Petitioner knowingly prescribed excessive quantities of Oxycontin, Percocet and/or Vicodin to the Morgillos and other individuals. By June 2000, it became apparent to Petitioner that the Morgillos and their associates were engaging in street-level resale of at least a portion of the controlled substances he was prescribing for them. Nevertheless, Petitioner continued writing such prescriptions. In the course of Petitioner's participation in this scheme, Gregory Morgillo threatened Petitioner with

physical harm on more than one occasion. (R.R. at 29a.)

2. Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.41(3),(4) and (5). These sections provide as follows:

§ 422.41 Reasons for refusal, revocation, suspension or other corrective actions against a licensee or certificate holder
The Board shall have authority to impose disciplinary or corrective measures on a board-regulated practitioner for any or all of the following reasons:
* * * *
(3) Being convicted of a felony or being convicted of a misdemeanor relating to a health profession ... in the courts of this Commonwealth, a Federal court or a court of any other state, territory or country.
(4) Having a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken ... by a proper licensing authority of another state, territory, possession or country, or a branch of the Federal Government.
(5) Being ... convicted of a felony relating to a controlled substance in a court of law of the United States....

3. 18 Pa.C.S. § 9124(c)(1). This provision authorizes the Board to suspend or revoke any license, certificate, registration or permit where the applicant has been convicted of a felony.

that they intended to submit to the Board. The hearing was continued, but the Board never issued an order adopting the parties' consent agreement. Petitioner's counsel[4] was sent notice that a hearing was scheduled for January 17, 2006; however, neither Petitioner nor his counsel appeared at the hearing.[5]

The Commonwealth submitted into evidence the Amended Order to Show Cause, with copies of Petitioner's criminal court records and the Connecticut consent order, and Petitioner's answer to the Amended Order to Show Cause. Thereafter, the Commonwealth proposed disciplinary action similar to that imposed by the Connecticut board, i.e., a $10,000 civil penalty, a one-year suspension of Petitioner's license, followed by two years probation, and a limitation on Petitioner's ability to prescribe medication. (R.R. at 54a–55a.) The hearing examiner asked whether Petitioner had passed the "SPEX" exam, which was a condition for reinstatement imposed by the Connecticut board. The Commonwealth attorney stated that he believed Petitioner had done so, based upon assertions by Petitioner's counsel. (R.R. at 55a–56a.)

In his March 7, 2006, adjudication and order, the hearing examiner reviewed the undisputed facts, including the stipulation of conduct as set forth in the district court plea agreement. (R.R. at 62a–63a.) The hearing examiner then observed that the record contained no evidence establishing whether Petitioner "completed his term of active probation, passed the SPEX, or re-sumed *a restricted practice* in Connecticut." (Record item 13, p. 9, emphasis added). In the absence of such evidence, the hearing examiner concluded that the record did not support an order permitting probationary practice in Pennsylvania. On March 7, 2006, the hearing examiner entered an order suspending Petitioner's license until such time as his license in the state of Connecticut "has been reinstated without restriction." (R.R. at 68a.)

Petitioner applied for reconsideration or rehearing of the hearing examiner's decision, seeking *modification of the hearing examiner's order.* Petitioner requested an opportunity to present to the Board or the hearing examiner testimony and evidence that were available to the Connecticut board when it rendered its decision. In his application, Petitioner asserted that his absence at the hearing was due to reasonable cause. He also alleged that, prior to the hearing, he provided documents to the Commonwealth's attorney reflecting that the state of Connecticut had restored his license *with restrictions,* and, based upon conversations between his counsel and the Commonwealth's attorney, he was under the belief that those documents would be provided to the Board. Petitioner explained that, as a consequence of his failure to attend the hearing, the hearing examiner *mistakenly* issued an order that contemplated an *unrestricted* reinstatement of Petitioner's license by the Connecticut board.[6] As a result of this mistake, the hearing examiner's order effectively prevented Petition-

---

4. Petitioner's references identify his attorney during the period prior to this appeal as Petitioner's "Connecticut counsel."

5. Petitioner asserts that he reasonably, albeit mistakenly, believed that this hearing would be a *pro forma* proceeding during which the hearing examiner would approve the proposed consent agreement.

6. The record supports Petitioner's contention that the hearing examiner was aware that Connecticut would never reinstate Petitioner's license without restrictions on Petitioner's ability to prescribe medications and that the hearing examiner *intended* to impose the same disciplinary terms as were contained in the Connecticut consent order. (*See* R.R. at 54a–55a.)

er from ever practicing medicine in the state of Pennsylvania and likely foreclosed Petitioner's opportunity to obtain employment in the state of Connecticut.

In its June 29, 2006, final adjudication and order, the Board concluded that Petitioner's knowing and consensual involvement with the trade of drug trafficking was not only a violation of the Act and the Board's regulations but also was antithetical to professional standards of conduct. (R.R. at 144a–55a.) Concluding that "it would be remiss if it did not act to the fullest extent of its authority in disciplining [Petitioner]," (Board's decision at 10), the Board *revoked* Petitioner's license to practice medicine.[7] On July 28, 2006, Petitioner filed a subsequent application for reconsideration or rehearing, which the Board denied.

■ On appeal to this court,[8] Petitioner argues, *inter alia,* that the Board erred in denying his request for reconsideration or rehearing. We agree.

The notice accompanying the hearing examiner's decision advises that a party may file *a request for rehearing and/or reconsideration by the hearing examiner,* which must be captioned either "Application for Rehearing," "Application for Reconsideration" or "Application for Rehearing or Reconsideration." The notice further advises that, irrespective of whether an application to the hearing examiner is filed, a party may also file an appeal to the Board, which should be captioned "Application for Review." (R.R. at 70a.)

■ Here, Petitioner filed a document that bore the caption "Application for Reconsideration or Rehearing." (R.R. at 71a.) Nevertheless, the Board characterized this document as "an application for review filed by [Petitioner]." (R.R. at 145a.) Because Petitioner sought clarification of the hearing examiner's order and captioned his filing as a request to the hearing examiner, we conclude that the Board erred in exercising its appellate jurisdiction in this matter. Instead, this matter should have been presented to the hearing examiner to allow the hearing examiner to reconsider whether the language of his order was consistent with his intent.

Accordingly, we vacate the Board's order, and we remand to the Board for further remand to the hearing examiner.

## ORDER

AND NOW, this 7th day of February, 2007, the order of the State Board of Medicine, dated June 29, 2006, is hereby vacated and this case is hereby remanded to the State Board of Medicine for further remand to the hearing examiner in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

7. It is well-settled that the Board is empowered to assess the seriousness of Petitioner's offenses differently than the hearing examiner did based on the same undisputed facts and to impose a harsher sanction than that recommended by the hearing examiner. *Telang v. Bureau of Professional and Occupational Affairs,* 561 Pa. 535, 751 A.2d 1147 (2000).

8. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Pisnanont v. State Board of Medicine,* 680 A.2d 911 (Pa.Cmwlth.1996).