**Richard P. GLUNK, Appellant**

v.

**PENNSYLVANIA STATE BOARD OF MEDICINE; Pennsylvania Department of State; Joyce McKeever; Ollice Bates, Jr., M.D.; Sara Petrosky; Kerry**

constitute binding precedent.

Maloney; Andrew Demarest; David Grubb; Mark Greenwald; Basil Merenda; Mark Vessella; Peter Marks; Steven Dade; Sabina Howell; Tammy Doherty; Thomas A. Blackburn

No. 16-3996

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 3, 2017

(Opinion filed: April 19, 2017)

Richard P. Glunk, Pro Se

Howard G. Hopkirk, Esq., Office of Attorney General of Pennsylvania, Sharon K. Rogers, Esq., Office of Attorney General of Pennsylvania, Civil Division, Litigation Section, Harrisburg, PA, for Defendant-Appellee

Before: AMBRO, KRAUSE and NYGAARD, Circuit Judges

## OPINION *

PER CURIAM

Richard P. Glunk, M.D., appeals from orders of the District Court dismissing his second amended complaint. For the reasons that follow, we will affirm.

Dr. Glunk, a Board-certified plastic surgeon, was a defendant in a medical malpractice case filed by the parents of 18 year-old Amy Fledderman, who died following liposuction performed by him. Dr. Glunk's medical malpractice insurance carrier tendered the policy limit, $1.2 million, but the case did not settle. On May 23, 2008, a Philadelphia County Court of Common Pleas jury returned a verdict in favor of the family in excess of $5 million and awarded punitive damages in the amount of $15 million. Dr. Glunk appealed. On November 12, 2010, the Superior Court affirmed, see Fledderman v. Glunk, No. 3379 EDA 2008, 22 A.3d 1067 (Pa. Super. Ct. Nov. 12, 2010).[1]

Meanwhile, on November 22, 2006, the Commonwealth filed an Order to Show Cause against Dr. Glunk, charging that he was subject to disciplinary action as a result of his treatment of Ms. Fledderman. On September 22, 2008, the Chief Hearing Examiner dismissed the disciplinary com-

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1. In upholding the award of punitive damages, the Superior Court concluded that Dr.

Glunk ignored both the warning signs of a medical emergency involving respiratory distress and Ms. Fledderman's mother's plea for transfer to a hospital.

plaint for insufficient proof. The Commonwealth appealed. On February 26, 2009, the State Board of Medicine ("the Board") affirmed, concluding that the Commonwealth failed to prove that Dr. Glunk should be disciplined in connection with Ms. Fledderman's death.[2]

On September 11, 2009, the Commonwealth filed another Order to Show Cause against Dr. Glunk, charging him with "immoral conduct" in connection with the prior disciplinary proceedings, in violation of 49 Pa. Code § 16.62, on the ground that he had attempted to influence a Board member.[3] Specifically, the Commonwealth alleged that, during the course of the previous disciplinary proceedings, Dr. Glunk met with Rabbi Solomon Isaacson of Congregation Beth Solomon, one of two statutory public members of the Board. While in the Rabbi's office, Dr. Glunk told the Rabbi that he might be coming before the Board, and he gave the Rabbi, who was organizing a fundraiser, a check for $5,000 payable to the "Friends of Bob Brady." During this meeting, Rabbi Isaacson gave Dr. Glunk a tour of the synagogue and invited him to make a contribution. Within two weeks of this meeting, the Rabbi opened an envelope containing a check for $5,000 from Dr. Glunk, payable to the synagogue.[4] A formal hearing on those allegations was held before Department of State Hearing Examiner Joyce McKeever. After the hearing, the Board recused and dele-

gated the matter to McKeever for a final adjudication and order. See 63 Pa. Cons. Stat. Ann. § 2203(d) ("The board or commission shall render a final adjudication or decision on any exceptions to the decision of a hearing examiner or any applications for review ..., provided that a board or commission may delegate to a hearing examiner the authority to render a final adjudication or decision in such cases as deemed appropriate.").

On December 2, 2010, McKeever issued a decision, concluding that Dr. Glunk had engaged in immoral conduct by attempting, however ineptly, to influence a member of the Board in connection with disciplinary proceedings against him. In so concluding, she resolved a conflict in the testimony of Rabbi Isaacson and Dr. Glunk with respect to (a) whether the Rabbi or Dr. Glunk first broached the matter of the Rabbi's membership on the Board, and (b) whether Dr. Glunk mailed a check to the Rabbi for his synagogue.[5] After reviewing the evidence, McKeever concluded that the Rabbi was the more credible witness. She concluded that Dr. Glunk met with the Rabbi in his office, knowing that the Rabbi was a member of the Board, and gave him two $5,000 checks—one for a political campaign the Rabbi supported and one for his synagogue – all for the sole purpose of trying to influence him as a Board member. As a sanction, McKeever ordered that Dr.

2. The Commonwealth charged, in pertinent part, that Dr. Glunk failed to timely call for emergency medical transport from his office to a hospital when Ms. Fledderman was in respiratory distress, and failed to intubate her or give her a better airway. The Board concluded, however, that the testimony was conflicting and thus that the Commonwealth did not meet its burden to show that disciplinary sanctions were warranted, stating that "unfortunate outcomes [] do not necessarily call for licensure actions."

3. "Immoral conduct" is defined in this context as the "commission of an act involving moral turpitude, dishonesty or corruption when the act directly or indirectly affects the health, welfare or safety of citizens of this Commonwealth." Id. at § 16.61(b)(2).

4. The Rabbi did not cash or deposit either check.

5. The Commonwealth was unable to produce the actual check to the synagogue and Dr. Glunk argued that it never existed.

Glunk's medical license be suspended for 60 days and that he pay a civil penalty in the amount of $5,000. McKeever specifically rejected the Commonwealth's request to revoke Dr. Glunk's medical license, reasoning that his misconduct did not involve patient care, he did not actually press the Rabbi to discuss his case or the Board, and he had not faced any other disciplinary action during his long career.

Dr. Glunk appealed through his counsel to the Pennsylvania Commonwealth Court, whose scope of review in an appeal of an order of the Board extends to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights have been violated, or whether an error of law was committed. See Telesford v. Bureau of Professional & Occupational Affairs, State Bd. of Medicine, 916 A.2d 1218, 1221 n.8 (Pa. Cmwlth. Ct. 2007). Dr. Glunk contended that: (1) the Commonwealth did not prove that his misconduct adversely affected the health, welfare or safety of the citizens of Pennsylvania, as required by § 16.61(b)(2); (2) the delegation from the Board to a hearing examiner deprived him of his right to review by the Board; (3) the hearing examiner improperly denied his motion to reopen the record to permit additional testimony, and (4) the hearing examiner erred in her findings of fact and credibility determination.

On June 15, 2011, the Commonwealth Court rejected all of these contentions as meritless and affirmed. See Glunk v. State Board of Medicine, 2011 WL 10893889 (Pa. Cmwlth. Ct. June 15, 2011) (holding in pertinent part that Board's delegation of matter to hearing examiner was proper "[g]iven that the Board had authority to delegate this matter to a hearing examiner, and had a rational reason for doing so, i.e., one of the Board's members was intricately involved in the matter and in fact testified as a witness in the matter[.]"). The Pennsylvania Supreme Court denied discretionary review on April 11, 2012. Dr. Glunk then filed a petition for writ of certiorari in the United States Supreme Court, presenting this question: "Does a state supreme court violate the First Amendment and Due Process clause of the United States Constitution by upholding discipline of a licensed physician for making a political contribution, holding that the act of making such a contribution is evidence of moral turpitude?" Certiorari was denied on October 29, 2012. See Glunk v. Commonwealth of Pennsylvania Bureau of Professional & Occupational Affairs (State Bd. of Medicine), 568 U.S. 979, 133 S.Ct. 571, 184 L.Ed.2d 340 (2012).

On April 7, 2014, Dr. Glunk filed a pro se civil rights action per 42 U.S.C. § 1983, in the United States District Court for the Middle District of Pennsylvania against Defendants. Dr. Glunk sued them in both their official and individual capacities, alleging that they had violated his federal constitutional right to procedural due process in connection with the 60-day suspension of his license and $5,000 penalty. Specifically, he alleged that the second disciplinary prosecution was maliciously motivated; that the Board improperly delegated the second prosecution to a hearing examiner for decision; that he was denied his right to appeal the hearing examiner's decision to the Board because of the delegation; and that he was denied his right to a fair hearing before a neutral and unbiased arbiter. Dr. Glunk sought money damages and equitable or injunctive relief. The defendants moved to dismiss the complaint. In an order entered on June 12, 2015, the District Court dismissed Dr. Glunk's complaint without prejudice and granted him leave to amend. The Court noted the defects in the complaint, namely the state sovereign immunity issue and the preclusive effect

of the prior litigation in state court, but also noted Dr. Glunk's assertion for the first time that he had uncovered new evidence that revealed a broader conspiracy among the defendants.

Dr. Glunk eventually filed a second amended complaint, naming seven new defendants and adding to his allegations of a conspiracy; he also continued to name state agencies as defendants. Specifically, Dr. Glunk alleged that, on December 10, 2009, prior to the hearing on the immoral conduct charges, the malpractice attorney for the Fledderman family sent a letter to Dr. Bates and Deputy Commissioner Mark Vessella apparently addressing the result of the first disciplinary proceeding. On December 15, 2009, Tammy Dougherty, the administrator for the Board, sent this letter via email to Basil Merenda, then Commissioner of Professional and Occupational Affairs, and Peter Marks, then Deputy Chief Counsel. Steven Dade and Sabina Howell, then Board counsel, were copied on that email. The second amended complaint alleged that these defendants conspired to cover up the letter by destroying emails, and that the letter played a role in McKeever's decision to suspend Dr. Glunk's license, all in furtherance of the family's vendetta and opposition to Dr. Glunk's bankruptcy action.

The State Board of Medicine and the Pennsylvania Department of State filed a motion seeking to be dismissed from the case pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of sovereign immunity. Board members Dr. Bates and Petrosky sought dismissal from the case on the basis of Rule 8 and the doctrine of claim preclusion, arguing that Dr. Glunk's second amended complaint added nothing new with respect to them.

Defendants Demarest, Greenwald, Grubb, Maloney and McKeever, in their motion to dismiss the second amended complaint, noted certain new matters; specifically, they noted that Dr. Glunk had made requests for documents under the Right to Know law, which resulted in him obtaining affidavits from various members of the Department of State regarding documents relating to his second disciplinary proceeding. They noted that his second amended complaint used these affidavits to supplement his claim of unfair bias on the part of McKeever. They noted further Dr. Glunk's reliance on the letter from the Fledderman's malpractice attorney, and that he claimed that this letter showed that the second disciplinary prosecution was the product of a conspiracy directed by politically connected friends of the Fledderman family. Demarest, Greenwald, Grubb and Maloney argued, however, that, notwithstanding this new matter, they were absolutely immunized from a suit for money damages as prosecutors under Imbler v. Pachtman, 424 U.S. 409, 424-26, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and McKeever argued that she was absolutely immunized from a suit for money damages as the judge in the second disciplinary proceeding under Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). These Defendants further argued that the second amended complaint was barred by the doctrine of claim preclusion. The newly added Defendants also moved to dismiss the second amended complaint pursuant to Rules 8 and 12(b)(6), arguing that the claims against them were based on conclusory allegations of a conspiracy, and that claims relative to allegations of withholding and/or destroying evidence should be dismissed on the basis of claim preclusion.

The Magistrate Judge recommended that the motions to dismiss the second amended complaint be granted, essentially on the basis of Rule 8 and because Dr. Glunk had failed to state a plausible proce-

dural due process claim. In orders entered on June 10, 2016 and October 3, 2016, the District Court dismissed the case as to all Defendants, and adopted the conclusions of the Magistrate Judge.

Dr. Glunk appeals. We have jurisdiction under 28 U.S.C. § 1291. In his pro se brief, he challenges the dismissal of his second amended complaint under Rules 8 and 12(b)(6), contending that the state proceedings were irregular, and that he was unfairly deprived of his property under color of law. He argues that claim preclusion does not apply where the defendants have concealed material information, Appellant's Pro Se Brief, at 11, and that he stated a viable procedural due process claim. He complains specifically about *ex parte* communications between McKeever and the prosecutors in his case, and the use against him of improper and extraneous information, and argues that the Magistrate Judge improperly denied him additional discovery. He further argues that judicial immunity does not apply in his case because McKeever "participated in the conspiracy and cover-up[.]" Id. at 37.

■ We will affirm. We exercise plenary review over a Rule 12(b)(6) dismissal. Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001). We may affirm the judgment of the District Court on any basis which finds support in the record. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980). The District Court correctly dismissed the second amended complaint as to the State Board of Medicine and Department of State, and all of the defendants to the extent that they were sued in their official capacities; they are immune from a suit for money damages under the Eleventh Amendment. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 72, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105

L.Ed.2d 45 (1989). Similarly, the prosecutors also are absolutely immunized from a suit for money damages. See Imbler, 424 U.S. at 424-26, 96 S.Ct. 984 (regardless of motive, decision to pursue charges is at core of prosecutor's role as advocate). Absolute immunity may not apply to a claim that the prosecutors conspired to manufacture false evidence. See Buckley v. Fitzsimmons, 509 U.S. 259, 272-73, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), but none of claims made by Dr. Glunk against the prosecuting defendants relate to manufacturing evidence or intimidating witnesses; rather, they all relate to claims of improper motive in bringing the charges and/or improper influence by Dr. Bates and the family of Ms. Fledderman.

■ McKeever, as the judge in Dr. Glunk's second disciplinary proceedings, also is absolutely immunized from a suit for money damages. The role of the hearing examiner in this case is "'functionally comparable' to that of a judge," Butz v. Economou, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and judicial immunity applies, despite any "informality with which [the judge] proceeded," and despite any *ex parte* feature of the proceeding, Stump, 435 U.S. at 363 & n.12, 98 S.Ct. 1099. The proper administration of justice requires that a judicial officer, in exercising the authority vested in her, be free to act without fear of being sued. Id. at 364, 98 S.Ct. 1099 (citing Bradley v. Fisher, 13 Wall. 335, 347, 20 L.Ed. 646 (1871)). Dr. Glunk's allegation of a conspiracy and cover-up by McKeever does not destroy her immunity from a suit for money damages. On the contrary, "[t]he fact that the issue before the judge is a controversial one is all the more reason that [s]he should be able to act without fear of suit." Id. (citing Bradley, 13 Wall. at 348).

■ As to Dr. Glunk's demand for equitable or injunctive relief, we agree with the

District Court that the doctrine of claim preclusion bars consideration of his procedural due process claim on the merits. The Due Process Clause entitles a person to an impartial and disinterested tribunal in adjudicative proceedings. See Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of a biased conception of the facts or the law applicable to a case. Id. However, the doctrine of claim preclusion bars an unsuccessful defendant from relitigating his claims. The requirements of claim preclusion are met here. See United States v. Athlone Indus., Inc., 746 F.2d 977, 983-84 (3d Cir. 1984). We agree with the District Court that there was a final judgment in the Commonwealth Court, the parties in the federal lawsuit are the same or are in privity with the prosecuting entity, and the assertions in the civil rights complaint involve the same operative facts as in Dr. Glunk's appeal to the Commonwealth Court. Dr. Glunk's second amended complaint contains many allegations concerning the manner in which the underlying prosecutions took place, which were already raised and rejected by the state court system and therefore claim preclusion bars such claims. Furthermore, claim preclusion prohibits reexamination not only of matters actually decided in the prior case, but also those matters that the parties might have, but did not, assert in that action. See Bradley v. Pittsburgh Board of Education, 913 F.2d 1064, 1070 (3d Cir. 1990). Dr. Glunk's claim that his constitutional right to procedural due process was violated because he was deprived of a neutral and unbiased arbiter could have been pursued in the Commonwealth Court in connection with his contentions that the delegation from the Board to McKeever deprived him of his right to review by the Board and that McKeever

erred in her rulings and decision to discipline him.

■ As to the new evidence which was not available when Dr. Glunk's appeal was heard by the Commonwealth Court, the key allegations in the second amended complaint are centered on Dr. Glunk's claims that McKeever was improperly influenced by confidential peer review materials and a letter written by the Fledderman's malpractice attorney. Dr. Glunk claims that the letter was an *ex parte* communication which improperly biased McKeever in deciding to suspend his medical license. Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is proper where the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Conclusory allegations are insufficient to survive a motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

We conclude that the second amended complaint, to the extent that it relies on new evidence which was not available when Dr. Glunk's appeal was heard by the Commonwealth Court, does not state a plausible procedural due process violation. The letter from the Fledderman's malpractice attorney, for example, even if seen by McKeever, would not have caused bias toward Dr. Glunk. Judges are sometimes exposed to extraneous and immaterial information and are equipped to ignore it. In Dr. Glunk's case, McKeever's adjudication of guilt was based on a credibility determination that Rabbi Isaacson was telling the

truth about the two checks. Notwithstanding Dr. Glunk's many assertions about *ex parte* communications, concealed emails, and privileged peer review materials, we do not understand him to be arguing that Rabbi Isaacson lied. It necessarily follows that McKeever's adverse (with respect to Dr. Glunk) credibility determination was not the product of bias. We conclude that Dr. Glunk did not allege additional facts which could possibly support the conclusion that McKeever was in fact biased and that her adjudication was reached in violation of his procedural due process right to a fair and neutral arbiter. We further conclude that additional discovery of communications at the Department of State would not have revealed evidence to support the necessary elements of a claim for relief. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).

For the foregoing reasons, we will affirm the orders of the District Court dismissing Dr. Glunk's second amended complaint.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.