**Azam KAHN, Petitioner,**

v.

**STATE BOARD OF AUCTIONEER EXAMINERS, Respondent,**

**Abid M. Butt, Petitioner.**

v.

**State Board of Auctioneer Examiners, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2001.

Decided Oct. 3, 2001.

Reargument Denied Dec. 13, 2001.

Edgar R. Casper, Harrisburg, for petitioner.

Bernadette Paul, Harrisburg, for respondent.

Before McGINLEY, Judge,
PELLEGRINI, Judge, and
McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

Before this Court are two consolidated appeals by Azam Kahn (Kahn) and Abid M. Butt (Butt), collectively, Auctioneers, from orders of the Commonwealth of Pennsylvania, State Board of Auctioneer Examiners (Board) imposing upon Kahn a $2,000 penalty and revoking Butt's auctioneer license for purported conduct each had engaged in other states in violation of Section 20(a)(11) of the Auctioneer and Auction Licensing Act (Act).[1]

On July 16, 1999, Kahn and Butt were each issued and served with a Notice and Order to Show Cause by the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs (Bureau) in which it was alleged that both Pennsylvania-licensed auctioneers had violated Section 20(a)(11) of the Act because they had disciplinary action taken against their auctioneer licenses in other states. Kahn's notice stated that he violated the Act due to the following actions taken by Virginia and Maine:

- on January 12, 1999, the Virginia Auctioneer Board approved a Consent Order imposing a $1,000 administrative penalty against Kahn for making material misrepresentations in the course of performing auctioneer duties; and

- on December 8, 1997, the Maine Board of Licensing of Auctioneers through a Consent Agreement imposed a $250 penalty and warned Kahn for making misrepresentations in advertisements.

Kahn filed an answer denying the characterizations of the other state disciplinary actions, explaining that the $1,000 he paid to the Virginia Board was for reimbursement of administrative costs and not a penalty, and there was no finding that he had made any material misrepresentations. He also argued that the Maine Consent Agreement made no finding that he violated any rules or regulations of that state, but only provided that he "denies, does not admit, but does not contest allegations of Complaint No. 122."

In Butt's Notice, the Bureau alleged that he violated the Act due to the following actions taken by Virginia, Texas and Wisconsin:

- on January 22, 1992, the Virginia Auctioneer's Board adopted a Consent Order imposing a monetary penalty of $900 against Butt for misleading advertising and for violating require-

1. Act of December 22, 1983, P.L. 327, *as amended*, 63 P.S. § 734.20(a)(11). That section provides:
   (a) **General rule.**—The board may, upon its own motion, and shall, promptly upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any person licensed by the board and may temporarily suspend or permanently revoke licenses issued by the board or impose a civil penalty not exceeding $1,000 at any time when,

after due proceedings provided in this act, it finds the licensee to have been guilty in the performance or attempt to perform any of the acts prohibited to others than licensees under this act, as follows:

* * *

(11) Having his license to engage in the auction profession revoked or suspended *or having other disciplinary action taken* or his application for licensure refused, revoked or suspended by the proper licensing authority of another state. (Emphasis added.)

ments to properly execute auction contracts;

- on March 20, 1995, the Texas Commission of Licensing and Regulation, through a Final Order, ordered Butt to cease and desist committing violations involving improper advertising and imposed an administrative penalty of $750;
- on November 14, 1996, the Texas Commission of Licensing and Regulation, through a Final Order, imposed an administrative penalty of $500 against Butt for misleading advertising; and
- on April 26, 1999, the Wisconsin Auctioneer Board, through a Final Decision and Order, suspended Butt's certificate of registration for one year for unprofessional conduct when he failed to disclose on his application disciplinary actions that had been taken in the other two states.

In response, Butt filed an answer arguing that in regard to the Virginia disciplinary action, he had done nothing wrong and there was no finding of fault or admission of guilt. He also alleged that because these were minor violations, it was less expensive to pay a fine than to attend a hearing. As to the Texas disciplinary action, he alleged that the omission of his name in an advertisement was a minor oversight by the advertising agent, and at the auction he forgot to announce his license number or make other legally mandated disclosures. He stated that he paid a fine rather than contest the charges at a hearing. As to the second disciplinary action in Texas relative to misleading advertising, he stated that he simply failed to comply with a font requirement. Regarding the Wisconsin disciplinary action, he denied that he had made a material misstatement and alleged that his failure to disclose discipline by other states was a mistake made by a temporary employee who filled out his license application.

■ A consolidated hearing was held before the Board. Neither Kahn nor Butt appeared to testify, but their attorney argued that it would be unfair or an abuse of the Board's discretion to take actions against them based upon the mere fact that disciplinary action had been taken against them in other states. After arguments, the Board found that it had a legitimate interest in regulating the practice of auctioneering in order to safeguard the public, and both Kahn and Butt had been disciplined by other states for incidents of misconduct that were serious enough to establish a pattern, thereby warranting the penalty imposed against Kahn and the revocation of Butt's auctioneer license. This consolidated appeal by Kahn and Butt followed.[2]

## I.

■ Auctioneers contend that they were denied procedural due process because there was a commingling of prosecutorial and administrative functions between the Prosecution Division and the Board. More specifically, they contend that the Prosecution Division offered them the opportunity to enter into Consent Agreements which Auctioneers agreed to sign, but the Board refused to approve the signed Agreements and scheduled a hearing, thereby taking over the prosecutorial function.

2. Our scope of review of the Board's decision is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *Pook v. State Board of Auctioneer Examiners*, 735 A.2d 134 (Pa.Cmwlth.1999).

■ As a general rule, where a tribunal supervises an investigation and is also responsible for adjudicating the matter after a formal adversarial hearing, the tribunal's decision is not, *per se*, biased, provided there is an adequate separation between the prosecutorial and adjudicatory functions. *Makris v. Bureau of Professional and Occupational Affairs*, 143 Pa.Cmwlth. 456, 599 A.2d 279, 284 (1991). The test to determine if there has been an improper commingling is whether the functions performed are adequately separated so there is no *actual* prejudice. *Id.* at 284–285. However, an administrative tribunal must be unbiased, and must avoid even the appearance of bias to ensure that constitutional rights are adequately protected. *Id.* Commingling or bias is not established because the agency or one of its members performs more than one role in the process. *Id.*

In this case, the Prosecution Division attempted to settle the matter with Auctioneers by having them sign consent agreements. That function is distinctly different from the Board's decision to hold a hearing and determine whether discipline was warranted. Because there is no other evidence that the functions of the two were not adequately separated, there was no commingling and, consequently, no deprivation of due process.[3]

## II.

■ Auctioneers next contend that Section 20(a)(11) of the Act violates due process because they have a constitutionally protected right to pursue a livelihood, and Section 20(a)(11) authorizes the Board to impose sanctions on licensees without affording them due process protections of their property interests.[4] They further argue that there is a substantive due process violation because "in the absence of any reference to the 'underlying facts' there is no rational nexus between the *fact* of disciplinary action of a Pennsylvania licensee by the licensing authority of another state and the imposition of *any* sanction by the Board which deprives, or adversely affects, the Pennsylvania licensee's constitutionally protected property right to pursue a livelihood as an auctioneer."[5]

In *Johnston v. Commonwealth of Pennsylvania, State Board of Medical Education and Licensure*, 49 Pa.Cmwlth. 9, 410 A.2d 103 (1980), this Court addressed the constitutionality of the state to regulate licensing as it related to physicians. In *Johnston*, a Pennsylvania-licensed physician had his license to practice medicine revoked in the State of Washington. The Pennsylvania State Board of Medical Education and Licensure then revoked his Pennsylvania license based on the now repealed Section 15 of the Medical Practice Act of 1974, Act of December 20, 1974,

---

**3.** Auctioneers' argument that we should not give the Board's adjudications great deference because they do not involve any special expertise is also without merit. *See Alpha Auto Sales v. Department of State, Bureau of Professional & Occupational Affairs*, 537 Pa. 353, 644 A.2d 153 (1994) (administrative agency's interpretation of statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous).

**4.** Although Auctioneers attempt to argue that their individual rights to a livelihood are actually public rights to be weighed against the

public's interest as represented by the Board, the right to a livelihood is a private interest that may be affected by official action. *Telang v. State Board of Medicine*, 561 Pa. 535, 751 A.2d 1147 (2000), citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**5.** Despite Auctioneers' argument that they were deprived of due process, we note that they were provided with a due process hearing which not only was continued several times at their request, but was also one at which they chose not to appear at to testify.

P.L. 551, *formerly* 63 P.S. § 421.15(a)(4),[6] *repealed by* the Act of December 20, 1985, P.L. 457, 63 P.S. § 422.41(4), which allowed the Board to impose disciplinary measures based on a physician having his license revoked or suspended or having other disciplinary action taken by the licensing authority in another state. Acknowledging that individuals had the right to follow the profession of their choice, we also acknowledged the public's right to be protected, holding the following:

> [T]he Legislature's authorization of suspension or revocation following disciplinary action taken by another state against a holder of a Pennsylvania license found in Section 15(a)(4) is neither unreasonable nor arbitrary and constitutes a valid exercise of the state's police power. Because the Pennsylvania Board has no real independent ability to monitor the performance of Pennsylvania-licensed physicians who conduct their practices out-of-state, we view the authority of the Pennsylvania board to act swiftly upon official verification of disciplinary action in another state as most salutary.

*Id.* at 105. We further noted that because the Pennsylvania Board was acting on the *fact* of disciplinary action in another state rather than on the underlying events leading to that action, the substance of the charges and the procedure utilized was immaterial for purposes of Section 15(a)(4).

In this case, it is the Board's responsibility to protect the public from Pennsylvania-licensed auctioneers who have had disciplinary action imposed on their licenses by the appropriate authorities in other states. Just as it is necessary for the public to be protected from physicians who have had disciplinary action taken on their out-of-state licensees, so, too, is it necessary to protect the public from auctioneers for the same reason and, as such, Section 20(a)(11) does not violate due process by allowing sanctions to be imposed based only on evidence of disciplinary action by another state. However, unlike in *Johnston,* where the physician was adjudicated guilty, because, in this case, there is one consent order to which the Auctioneer neither admitted guilt nor was adjudicated guilty, the question then is whether there must be an adjudication of guilt or an admission of guilt in another state before reciprocal disciplinary action may be taken by the Board.

■ While a licensee need not have his or her license suspended in another state as in *Johnston* in order for the Board to impose sanctions, it is paramount that the licensee admits guilt or be found guilty of the alleged violation by the outside state.[7] Due process rights are violated where there is the imposition of sanctions based upon another jurisdiction's disciplinary

---

6. The Board's authority is now granted in Section 41 of the Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.41(4).

7. *See also Tandon v. State Board of Medicine,* 705 A.2d 1338 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 556 Pa. 682, 727 A.2d 134 (1998) (doctor's Pennsylvania medical license suspended due to Tennessee Board of Medical Examiners previously finding him guilty of violating Medical Practice Act and issuing final order suspending his license to practice medicine in that state); *Barran v. State Board of Medicine,* 670 A.2d 765 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 544 Pa. 685, 679 A.2d 230 (1996) (doctor's Pennsylvania medical license suspended after Massachusetts Board of Registration indefinitely suspended his license for murdering his housemate); and *Quintana v. State Board of Osteopathic Medical Examiners,* 77 Pa. Cmwlth. 438, 466 A.2d 250 (1983) (doctor's Pennsylvania medical license suspended due to Michigan State Board previously finding him guilty of prescribing medication without examinations and placing him on probation for three years).

consent order where the order is neither based on an admission of misconduct nor any finding of fact regarding the alleged misconduct. The imposition of a reciprocal sanction without any regard as to whether the other state imposing a sanction has done so through a process that requires a finding of misconduct does not protect the public from unscrupulous auctioneers when there is no admission or finding of guilt, and permits the Board to deem conclusive findings that another jurisdiction has never made. The mere imposition of a sanction by another jurisdiction without such a finding is not conclusive evidence of guilt, and such action cannot be used as a basis for discipline in Pennsylvania.

In Kahn's case, the Virginia Consent Agreement specifies that, "[t]he execution of this agreement does not constitute an admission of a violation of the Board's regulations by the undersigned." Because Kahn neither admitted guilt nor was found guilty of the alleged charges in Virginia, that Consent Agreement could not constitute the basis to impose sanctions in Pennsylvania and his due process rights were violated when sanctions were imposed based on that Agreement.[8] However, the Maine Consent Agreement specifies that "Mr. Kahn denies, does not admit, but does not contest allegations of Complaint No. 122." Such a statement is essentially a plea of no contest or *nolo contendre* which has the same effect of a guilty plea. *Commonwealth v. Darden,* 366 Pa.Super. 597, 531 A.2d 1144 (1987). Because Kahn effectively plead guilty to the Maine allegations, the Board could impose sanctions for that out-of-state disciplinary action.

Butt's case, however, is different because he either admitted to the violation or was found guilty by the other states' Auctioneer Boards. He was found guilty twice in Texas by final order which imposed penalties and by final order in Wisconsin which suspended his license for one year. As to the Virginia Consent Order Butt signed, although there was no formal hearing, he admitted his guilt to the charges alleged by stating: "Butt hereby knowingly and voluntarily waives his right to a formal public hearing, admits the alleged violations of the Board's Regulations, and consents to the imposition of the following sanction by the Board. . . ." Because there were adjudications in all three states that Butt was guilty of the conduct alleged, there was no due process violation, and the Board did not err by suspending his license.

Accordingly, the decision of the Board as to Kahn is vacated and the case is remanded to the Board for a determination of sanctions based only upon the disciplinary action imposed by Maine. The decision of the Board as to Butt is affirmed.

### ORDER

AND NOW, this *3rd* day of *October,* 2001, the order of the State Board of Auctioneer Examiners, dated September 19, 2000, at No. 1999–64–02608 pertaining to Azam Kahn, is vacated and the case remanded to the Board to impose sanctions in accordance with this decision. The Board's order dated September 19, 2000, at 1999–64–02715 pertaining to Abid M. Butt, is affirmed.

Jurisdiction relinquished.

---

8. Additionally, we note that the Virginia Consent Agreement specifies that the sanction imposed was strictly for payment of the costs of investigating the charges and not for any finding or agreement of wrongdoing.