842 A.2d 936

**Azam KHAN, Appellee**

**v.**

**STATE BOARD OF AUCTIONEER EXAMINERS, Appellant.**

**Azam Khan, Appellant**

**v.**

**State Board of Auctioneer Examiners, Appellee.**

**Abid M. Butt, Appellant**

**v.**

**State Board of Auctioneer Examiners, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2002.

Decided Feb. 20, 2004.

168

170

Edgar R. Casper, James G. Morgan, Harrisburg, for Azam Khan and Abid M. Butt.

Steven Vincent Turner, Philadelphia, Bernadette Katherine Paul, Herbert Abramson, John Thomas Henderson, James M. Sheehan, Harrisburg, for State Bd. of Auctioneer Examiners.

Before: CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice NEWMAN.

Promulgated pursuant to the Professions and Occupations Code (Code), Section 20(a)(11) of the Auctioneer and Auction Licensing Act (Act), Act of December 22, 1983, P.L. 327, 63 P.S. § 734.20(a)(11), permits an auctioneer to be disciplined if his or her "license to engage in the auction profession [has been] revoked or suspended or ... other disciplinary action [has been] taken ... by the proper licensing authority of another state." In these consolidated appeals, we decide, *inter alia,* whether, pursuant to that Section, an auctioneer may be disciplined where the alleged wrongful conduct resulted in a settlement agreement that admitted no fault. Based on the following rationale, we affirm the Order of the Commonwealth Court.

## *FACTS AND PROCEDURAL HISTORY*

Azam Khan (Auctioneer Khan) and Abid Butt (Auctioneer Butt) (collectively "Auctioneers") are licensed auctioneers in

Pennsylvania. On July 16, 1999, Auctioneers were each issued and served with a Notice and Order to Show Cause by the State Board of Auctioneer Examiners (Board), alleging that both Pennsylvania-licensed auctioneers had violated Section 20(a)(11) of the Act, 63 P.S. § 734.20(a)(11),[1] because other states had taken disciplinary action against their auctioneer licenses. The Board is the administrative body charged with the authority and responsibility to oversee those engaging in the auctioneering profession within this Commonwealth, and to determine the competency and fitness of a licensee to conduct auctions here. It is imbued by statute with the authority to license auctioneers, investigate complaints, and impose disciplinary sanctions with respect to auctioneer professionals practicing within the Commonwealth. 63 P.S. § 734.31.

Auctioneer Khan's Notice stated that he had violated the Act due to the following actions taken by Virginia and Maine:

- On January 12, 1999, the Virginia Auctioneers Board approved a Consent Order imposing a $1,000.00 administrative penalty against Auctioneer Khan for making a material misrepresentation in the course of performing his auctioneer duties; and

- On December 8, 1997, the Maine Board of Licensing of Auctioneers, through a Consent Agreement, imposed a $250.00 penalty and warned Auctioneer Khan for making misrepresentations in advertisements.

(Original Khan Record, Tab 1.) Auctioneer Khan filed an Answer denying the characterizations of the other state ac-

---

1. Section 20(a)(11) states in pertinent part:

§ 734.20. Investigations and enforcement actions

(a) General rule.—The board may ... investigate any action or business transaction of any person licensed by the board and may temporarily suspend or permanently revoke licenses issued by the board or impose a civil penalty not exceeding $1,000 at any time when ... it finds the licensee to have been guilty ... as follows:

\* \* \*

(11) Having his license to engage in the auction profession revoked or suspended or having other disciplinary action taken or his application for licensure refused, revoked or suspended by the proper licensing authority of another state.

tions as disciplinary actions, explaining that the $1,000.00 he paid to the Virginia Board was not a penalty but merely reimbursement of administrative costs. He also asserted that the Virginia agreement contained no finding that he had made any material misrepresentations.[2] Concerning the Maine Consent Agreement, Auctioneer Khan further argued that the agreement made no finding that he violated any rules or regulations of that state, but only provided that he "denies, does not admit, but does not contest allegations of Complaint No. 122." *Id.*

Before the Board, Auctioneer Khan did not contest the fact that the Maine Consent Agreement constituted a disciplinary action, only that it contained no findings of wrongdoing. His challenge to the Maine agreement was premised primarily on his argument that it would violate the standards set forth by this Court in *Lyness v. State Bd. of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), if the Board took disciplinary action against him based on disciplinary action taken in a state that does not prohibit commingling of prosecutorial and adjudicative functions.[3]

**2.** In Virginia, Auctioneer Khan knowingly and voluntarily waived his right to a formal hearing on the pending charges and specifically agreed to resolve the matter by paying $1,000.00 in administrative costs. He also agreed that, if he did not pay the costs, his license would be automatically suspended, and waived any right to a hearing on the automatic suspension.

**3.** In *Lyness*, the State Board of Medicine heard evidence against a physician, determining that formal charges should be filed followed by a formal hearing. Although a hearing examiner conducted the formal hearing, many of the same members of the Board that decided to prosecute the physician reviewed the ensuing recommendation. We held that, because the members of the Board made both the decision to prosecute and arrived at the final adjudication, adjudicative and prosecutorial functions were commingled and violated the right of the physician to due process. We required that there be a "wall of division" between those prosecuting and those adjudicating the charges. *Lyness*, 605 A.2d at 1209. Subsequently, in *Stone & Edwards Ins. Agency, Inc. v. Dep't of Ins.*, 538 Pa. 276, 648 A.2d 304, 307 (1994), this Court clarified that "the form of impermissible 'appearance' of bias ... must clearly be one that arises from an *actual* environment of commingled functions." (Emphasis in original.)

It is important to note that in *Lyness*, we did not hold that a reciprocal disciplinary action may not be taken against a professional

In Auctioneer Butt's Notice, the Board alleged that he violated the Act due to the following actions taken by Virginia, Texas, and Wisconsin:

- On January 22, 1992, the Virginia Auctioneers Board adopted a Consent Order imposing a monetary penalty of $900.00 against Auctioneer Butt for misleading advertising and for violating requirements to properly execute auction contracts;

- On March 20, 1995, the Texas Commission of Licensing and Regulation, through a Final Order, ordered Auctioneer Butt to cease and desist committing violations involving improper advertising and imposed an administrative penalty of $750.00;

- On November 14, 1996, the Texas Commission of Licensing and Regulation, through a Final Order, imposed an administrative penalty of $500.00 against Auctioneer Butt for misleading advertising; and

- On April 26, 1999, the Wisconsin Auctioneer Board, through a Final Decision and Order, suspended Auctioneer Butt's Certificate of Registration for one year for unprofessional conduct when he failed to disclose disciplinary actions that had been taken against him in the other two states on his application.

(Original Butt Record, Tab 1.) *Kahn v. State Bd. of Auctioneer Examiners,* 785 A.2d 512 (Pa.Cmwlth.2001).[4]

In response, Auctioneer Butt filed an Answer arguing that, with regard to the Virginia disciplinary action, he had done nothing wrong and there was no finding of fault or admission of guilt. He also alleged that, because these were minor violations, it was less expensive to pay the fine than to attend

where the foreign jurisdiction does not prohibit the commingling of prosecutorial and adjudicative functions. However, the assertion of Auctioneer Khan that Maine does not prohibit the commingling of prosecutorial and adjudicative functions is patently incorrect. *See Robitaille v. Maine,* 468 A.2d 311 (Me.1983) (indicating that, pursuant to the Maine Administrative Procedures Act, hearing officers do not function in both prosecutorial and adjudicative capacities).

**4.** Auctioneer Khan's name has been misspelled in various proceedings.

a hearing. Concerning the Texas disciplinary actions, he alleged that the omission of his name in an advertisement was a minor oversight by the advertising agent and, at the auction, he forgot to announce his license number or make other legally mandated disclosures. He stated that he merely paid the fines rather than contest the charges at the hearing. As to the second disciplinary action in Texas relative to misleading advertising, he stated that he simply failed to comply with a font requirement.

Regarding the Wisconsin disciplinary action, he denied that he had made a material misstatement and alleged that his failure to disclose disciplinary actions by other states was a mistake made by a temporary employee who filled out his license application. He alleged that this was, at most, supervisory negligence that did not merit a revocation in Pennsylvania.

A consolidated hearing was held before the Board. Neither of the Auctioneers appeared to testify, but counsel argued that it would be unfair or an abuse of the Board's discretion to take disciplinary actions against them based upon the mere fact that disciplinary action had been taken against them in other states. Counsel argued that the imposition of sanctions based on conduct occurring outside this Commonwealth violated substantive and procedural due process. The Board found that it had a legitimate interest in regulating the practice of auctioneering in order to safeguard the public in Pennsylvania, and both Auctioneers had been disciplined by other states for incidents of misconduct that were serious enough to establish a pattern thereby warranting the penalty imposed against Auctioneer Khan and the license revocation of Auctioneer Butt. The State Board of Auctioneers ordered Auctioneer Khan to pay $2,000.00 in civil penalties and revoked Auctioneer Butt's license to practice in Pennsylvania, pursuant to Section 20(a)(11) of the Act.[5]

5. Revocation is an extreme sanction that permanently revokes the license of the auctioneer. However, after a period of at least one year, at the sole discretion of the Board, the auctioneer may apply for and obtain reinstatement of his license. 63 P.S. § 734.28(a). The only

Both Auctioneers appealed. The Commonwealth Court consolidated the cases and upheld the constitutionality of the Act with regard to the Board's ability to impose reciprocal discipline. The court also found that both the Virginia and Maine Agreements constituted disciplinary actions, but concluded that the Board could not take action against Auctioneer Khan based upon the Virginia Consent Order. It decided that violations of due process occurred when the Board imposed sanctions based upon another jurisdiction's disciplinary order, where there is neither an admission nor finding of wrongdoing regarding the alleged conduct. It found that the Maine Order could serve as a basis for a sanction in Pennsylvania because Auctioneer Khan had essentially pled *nolo contendere* in that Consent Agreement. The court vacated and remanded the Board's action with regard to the Virginia discipline of Auctioneer Khan, but upheld the Board's decision regarding Auctioneer Butt. All parties requested reargument, which was denied.

The Board filed a Petition for Allowance of Appeal alleging, *inter alia,* that the Commonwealth Court should not have vacated the sanction imposed upon Auctioneer Khan. Auctioneer Butt filed a Cross–Petition, contesting his license revocation. Auctioneer Khan filed a Cross–Petition, challenging the finding of the Commonwealth Court that the Maine Order could provide a basis for a sanction pursuant to Section 20(a)(11) of the Act. We granted allowance of appeal to address the important issues raised in these consolidated matters.

## *DISCUSSION*

Auctioneers Khan and Butt argue before this Court that the infractions resulting in disciplinary action in Virginia, Maine, and Texas were effectively so minor that it was simpler to accede to the proffered settlement agreements than it was

caveat is that no license may be reinstated following revocation for crimes enumerated in this Section, such as forgery, embezzlement, extortion, obtaining money under false pretenses, criminal conspiracy to defraud, and like offenses. 63 P.S. § 734.28(b).

to contest the charges. Auctioneer Butt contends that he was disciplined in Virginia and Texas for minor violations and that the Wisconsin disciplinary action resulted from a supervisory error. In the same respect, Auctioneer Khan asserts that the agreements to which he was a party in Maine and Virginia admit of no wrongdoing and should not be characterized as disciplinary actions. The Auctioneers complain that the Board ignored these contentions, which should have mitigated in their favor. We cannot agree. The Board, in a reciprocal disciplinary action, may not consider the merits of the discipline imposed by the foreign jurisdiction, which is the appropriate forum in which to litigate them. We conclude that, in order to render the imposition of reciprocal discipline improper, the auctioneer must show either that: 1) there was no disciplinary action taken in the foreign disciplinary proceeding; 2) an appeal from the disciplinary action is pending; 3) the foreign disciplinary proceeding was *ultra vires* or lacking in the fundamentals of due process; or 4) the misconduct established in the foreign adjudication justifies substantially different discipline in this Commonwealth. *Cf. Morrissey v. Morrissey,* 552 Pa. 81, 713 A.2d 614 (1998).

### The Appeal of Azam Khan

Auctioneer Khan disputes the finding of the Commonwealth Court that his Consent Agreement in Maine could form the basis for reciprocal discipline in Pennsylvania. He argues that the sanctions imposed upon him bear no rational relationship to the violation of Section 20(a)(11). He contends that no state may properly impose discipline on a licensee based only on the fact of discipline by the licensing authorities of other states without reference to the underlying facts of the matter. We disagree.

■ Initially, it must be noted that, in documents submitted to the Board, Auctioneer Khan stipulated that "Maine's discipline of [Auctioneer Khan] constitutes a per se violation of the act." (*See* Respondent's Reply to the Commonwealth's Answer to Respondent's Motion to Dismiss, Original Khan Record Tab 13, ¶ 4.) Auctioneer Khan may not now change

direction and contend that the disciplinary action in Maine is insufficient to form the basis for disciplinary action in Pennsylvania.

However, Auctioneer Khan's challenge to the Act has greater magnitude for he is challenging the application of Section 20(a)(11) on constitutional grounds. He alleges that the adjudications by the Board bear no rational relationship to a violation of Section 20(a)(11) and that his rights, as well as those of Auctioneer Butt, have been subjected to a violation of substantive and procedural due process. His substantive due process claim challenges the authority of this Commonwealth to impose reciprocal discipline based upon the mere fact that another state imposed a sanction. His procedural due process claim is grounded on his assertion that there was a commingling of prosecutorial and adjudicative functions on the part of the Maine disciplinary board and that the State of Maine does not have procedural safeguards in place to prevent commingling of prosecutorial and adjudicative functions.

### Procedural Due Process

There is no provision of either the state or federal constitution requiring a reciprocal arrangement between any other state for the licensing of any business or profession. That is a privilege governed strictly as a matter of state policy and that policy is set by the legislature. No state must admit a lawyer, auctioneer, doctor, chiropractor, real estate agent, or funeral director from any other state unless it so desires; when it does, it establishes such standards as it feels proper with respect to reciprocal licensing. Reciprocal discipline prevents licensed professionals from violating ethical rules, being disciplined, and then transferring to a new jurisdiction to continue to practice with an unblemished record of ethical conduct. The rules of reciprocal discipline expressly allow states to treat decisions reached in the disciplinary proceedings of other jurisdictions as a rebuttable conclusion that the auctioneer has engaged in conduct that violates ethical rules. It is beyond cavil that ethical rules are not for punishing wrongdoers, but have been established to determine the fit-

ness of an individual to be an auctioneer as well as to protect the public from unscrupulous operators. *See, e.g.,* 63 P.S. §§ 734.3, 734.8, 734.13, 734.16–734.20. At the same time, the auctioneer is provided with a forum to explain why the discipline imposed by another jurisdiction should not be imposed by the jurisdiction enforcing reciprocal discipline.

Auctioneer Khan argues that reciprocal disciplinary action has a lesser place in non-health-care related professions because he is not responsible for the lives or safety of others. This argument totally misses the mark. The public has the right to be protected from unscrupulous or fraudulent practices and it depends on the licensing divisions in each state to provide a measure of security that auctioneers in good standing, as well as other professionals, will conduct business fairly and honestly.

■ When a state occupational or professional license is conferred, it represents the opinion of the State that the license holder has met the enumerated qualifications for that license in terms of education, experience, honesty, and integrity. There is a concomitant burden on the licensee to remain in good standing in all jurisdictions in which he or she is licensed. Auctioneer Khan maintains that it was easier and less expensive to pay a fine than to attend the hearing and defend his case. Yet, in 1997, when Auctioneer Khan entered into a Consent Agreement by which he agreed to accept discipline in Maine, and in 1999, when he entered into a settlement in Virginia, he was legally responsible for knowing that he could be subjecting himself to a domino effect of further discipline in those jurisdictions where reciprocal discipline statutes were then in effect.

■ Geographical distinctions are irrelevant to the quality of professional conduct. The public depends on the licensing division to ensure that each licensee adheres to the code of conduct established for each occupation or profession. Serious aberrations in professional conduct, whether in this Commonwealth or in one of our sister states, violate the trust conferred upon each licensee when his or her license is issued.

One who seeks and accepts a professional or occupational license impliedly consents to submit his qualifications to a statutory tribunal that the legislature has created to decide, within legitimate discretionary boundaries of applicable law, his fitness to continue enjoyment of licensed privilege. "In the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of [an administrative] agency's action or into the details or manner of executing agency action." *Slawek v. State Bd. of Med. Ed. & Licensure*, 526 Pa. 316, 586 A.2d 362, 365 (1991).

The guarantee of due process of law, in Pennsylvania jurisprudence, emanates from a number of provisions of the Declaration of Rights, particularly Article I, Sections 1, 9, and 11 of the Pennsylvania Constitution. *Lyness*, 605 A.2d at 1207. These provisions in turn have enjoyed a long history in the Commonwealth, tracing their roots to early documents, including the English Magna Charta. *Harris v. State Bd. of Optometrical Examiners*, 287 Pa. 531, 135 A. 237, 238 (1926).

This Court has recognized as well established the principle that "due process is fully applicable to adjudicative hearings involving substantial property rights...." *Soja v. Pennsylvania State Police*, 500 Pa. 188, 455 A.2d 613, 615 (1982). Such property rights perforce include the right of an individual to pursue a livelihood or profession, thus triggering the protective mechanism of procedural due process. *See, e.g., Roche v. State Bd. of Funeral Directors*, 63 Pa.Cmwlth. 128, 437 A.2d 797 (1981). Although constitutional due process protects an individual's freedom to engage in any legitimate employment or business activity, it has been widely recognized that the state may, in the exercise of its police power, sanction a licensee if the general welfare demands that the public be protected against ignorance, incompetence, or fraud. *Adler v. Montefiore Hosp. Assoc.*, 453 Pa. 60, 311 A.2d 634, 640–41 (1973). Express provision is made for sanctioning the licensee by means of legislation specifying certain contingencies as cause for disciplinary action. Finally, and most importantly, the licensee is provided with notice and the opportunity to be

heard. In the instant matter, Auctioneer Khan was provided both notice and the opportunity to be heard.

 Auctioneer Khan complains that he was denied due process in the State of Maine because that State permits commingling of prosecutorial and adjudicative functions. For Auctioneer Khan to succeed, he must demonstrate that: 1) there was no disciplinary action taken in the foreign disciplinary proceeding; 2) an appeal from the disciplinary action is pending; 3) the foreign disciplinary proceeding was *ultra vires* or lacking in the fundamentals of due process; or 4) the misconduct established in the foreign adjudication justifies substantially different discipline in this Commonwealth. Essentially, Auctioneer Khan challenges the Maine Order on the basis of the third prong. However, because the State of Maine does not permit the commingling of prosecutorial and adjudicative functions in violation of the procedural due process rights of defendants, *Robitaille, supra* n. 3, the procedural due process challenge of Auctioneer Khan must fail and we hold that the application of reciprocal discipline based on the Maine Consent Agreement does not violate procedural due process.

### Substantive Due Process

 We begin our analysis of the substantive due process challenge brought by Auctioneer Khan with the Tenth Amendment to the United States Constitution, which preserves for the many states the powers "not delegated to the United States by the Constitution." One of the most important functions of government, as previously set forth by this Court, is:

> [T]he exercise of the police power for the purpose of preserving the public health, safety and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. It is also true ... that the police power has been juridically extended to many fields of social and economic welfare. But [this] power is not unrestricted.... [A] law which purports to be an exercise of the police power must not be unreasonable,

unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests[,] the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.

*Gambone v. Commonwealth,* 375 Pa. 547, 101 A.2d 634, 636–37 (1954). Substantive due process is the "esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice," *Commonwealth v. Stipetich,* 539 Pa. 428, 652 A.2d 1294, 1299 (1995) (Cappy, J. dissenting), and its precepts protect fundamental liberty interests against infringement by the government.[6]

Preliminarily, for substantive due process rights to attach there must first be the deprivation of a property right or other interest that is constitutionally protected. Pursuant to Article I, Section 1 of the Pennsylvania Constitution, all persons within this Commonwealth possess a protected interest in the practice of their profession. *Nixon v. Commonwealth,* 839 A.2d 277, 2003 WL 23095675 (Pa.2003); *Adler,* 311 A.2d at 640. Thus, after a license to practice a particular profession has been acquired, the licensed professional has a protected property right in the practice of that profession. *Telang v. Bureau of Prof'l & Occupational Affairs,* 561 Pa. 535, 751 A.2d 1147, 1150 (2000). Nevertheless, the right to practice a chosen profession is subject to the lawful exercise of the power of the State to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations. *Gambone,* 101 A.2d at 637.

6. "Virtually every state statute affects important rights." *Shapiro v. Thompson,* 394 U.S. 618, 655, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (Harlan, J. dissenting).

To constitute a lawful exercise of the state's police power, social and economic legislation must first be directed toward a valid state objective. *Id.* To withstand a substantive due process challenge, a statute or regulation must seek to achieve a valid state objective by means that are rationally related to that objective. *Id.* The rational relationship standard of substantive due process by which legislation is judicially measured is that the statute or regulation at issue must have a real and substantial relationship to the object sought to be obtained.[7] *Nixon,* 839 A.2d 277, 2003 WL 23095675 at *6; *Pennsylvania State Bd. of Pharmacy v. Pastor,* 441 Pa. 186, 272 A.2d 487, 491 (1971). Second, pursuant to a substantive due process analysis, the rights of the individual must be balanced against the public interest. *In re Realen Valley Forge Greenes Assoc.,* 838 A.2d 718, 2003 WL 22971249 *8 (Pa.2003); *Secretary of Revenue v. John's Vending Corp.,* 453 Pa. 488, 309 A.2d 358, 361 (1973).

When confronted with a constitutional challenge premised upon substantive due process grounds, the threshold inquiry is whether the challenged statute purports to restrict or regulate a constitutionally protected right. *Commonwealth v. Burnsworth,* 543 Pa. 18, 669 A.2d 883, 889 (1995). If the statute restricts a fundamental right, it must be examined under strict scrutiny. *Smith v. Coyne,* 555 Pa. 21, 722 A.2d 1022, 1025 (1999). Pursuant to that analysis, legislation that significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate that state purpose. *Nixon,* 839 A.2d 277, 2003 WL 23095675 at *5; *Commonwealth v. Robinson,* 497 Pa. 49, 438 A.2d 964 (1981), *appeal dismissed,* 457 U.S. 1101, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982).

7. The requirement that enactments have a real and substantial relationship to the object sought to be obtained is a stronger test than the rational basis test employed in an equal protection analysis. *Nixon; Pennsylvania St. Bd. of Pharmacy v. Pastor,* 441 Pa. 186, 272 A.2d 487 (1971).

We acknowledge that individuals enjoy certain property rights in the continued practice of their professions and those rights are entitled to due process protection. The right to practice one's profession is sufficiently important to surround it with a panoply of legal protections, including disciplinary hearings that are consistent with procedural due process. However, this fact does not mean that those rights cannot be affected by state legislation. Indeed, this Court has unequivocally held that the right to pursue a profession is not a fundamental right for substantive due process purposes, which would entitle it to strict scrutiny, and legislation infringing upon that right need only be examined to determine whether there is a real and substantial relationship to a governmental interest. *See Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), *cert. denied,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976).

Because Auctioneer Khan's right to practice his profession with limited government control does not implicate a fundamental right, we must determine whether the Act bears a real and substantial relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Nixon,* 839 A.2d 277, 2003 WL 23095675 at *5. Whether a statute is wise or whether it is the best means to achieve the desired result are matters left to the legislature, and not the courts. Moreover, the General Assembly is presumed to have investigated the question and ascertained what is best for the good of the profession and the good of the people. *See Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952), *rev'd on other grounds, Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978). As long as there is a basis for finding that the statute is rationally related to a legitimate state interest, the statute must be upheld.

States have a strong interest in regulating the practice of professions within their borders, and they have broad power to establish standards for licensing all types of professional practitioners in order to protect the valid interests of

the public.[8] A state may impose those professional requirements that it believes necessary to protect its citizenry. The concomitant impact of those requirements on the practicing professional is not arbitrary or unreasonable if that impact is based on conduct of the individual that violates the statutory governance of his profession.

Section 20(a) of the Act is intended to protect the public and preserve the integrity of the auction process in this Commonwealth. Discipline is based on a judgment that an auctioneer has behaved in such a way that he is unworthy of the trust that the public and the Board must place in his representations, his conduct, and his character at the time of licensing. An auctioneer who is disciplined in one state is not suddenly rehabilitated after crossing state lines. Permitting professionals disciplined in other states to practice their profession or occupation in Pennsylvania tends to undermine public confidence in the effectiveness of the disciplinary procedures of this Commonwealth. Generally, we repose confidence in, and accord deference to, the lawful procedures of our sister states. As a result, this Commonwealth has given effect to the disciplinary decisions of another jurisdiction without undertaking the task of delving deeply into the inquiry. *See, e.g., Tandon v. State Bd. of Med.,* 705 A.2d 1338 (Pa.Cmwlth. 1997), *petition for allowance of appeal denied,* 556 Pa. 682, 727 A.2d 134 (1998); *Shoenhair v. Bureau of Prof'l & Occupational Affairs,* 74 Pa.Cmwlth. 217, 459 A.2d 877 (1983). The imposition of discipline for in-state infractions and reciprocal

**8.** The Auctioneers, at oral argument, plausibly asserted that professionals should be disciplined in like manner, analogizing to the disciplinary rules issued by this Court. An important distinction is immediately apparent, however, in that admission of attorneys to practice law results from a judicial act and this Court is the sole arbiter of attorney discipline. In contrast, statutory licensing of other occupations and professions is legislative in nature and statutory licensing criteria are enacted by the General Assembly. Further, regulations promulgated by the governing occupational or professional boards spring from a legislative grant of authority and are administered by an executive agency. Thus, while the remaining co-equal branches of government are free to create their professional disciplinary rules in concert with those of this Court, this Court may not impose its system of discipline on the professionals of our co-equal branches of government.

discipline for extra-state violations is integral to state regulation of the auctioneering profession. Thus, we hold that Section 20(a) bears a real and substantial relationship to a legitimate state interest in protecting its citizenry from fraudulent and unscrupulous practices and does not suffer from a constitutional infirmity. When balanced against the rights of the auctioneer in this instance, the protection of the Pennsylvania citizenry is paramount.[9]

Accordingly, we find that Section 20(a)(11) does not violate substantive or procedural due process concerns and that the Maine Consent Agreement may properly form the basis for reciprocal discipline against Auctioneer Khan.

### *The Appeal of the State Board of Auctioneer Examiners*

The Board challenges the decision of the Commonwealth Court, which determined that it violated Auctioneer Khan's substantive due process rights by the imposition of reciprocal discipline where the Virginia Consent Agreement did not include an admission by Auctioneer Khan that he violated the sections of the Code of Virginia at issue. The court concluded that the Virginia Consent Agreement constituted a disciplinary action but that, without either an admission or a finding of guilt, the Virginia Consent Agreement could not form the basis for imposing sanctions on Auctioneer Khan in Pennsylvania. Further, the Board contends that the unintended result of this determination by the Commonwealth Court will be to permit wrongdoers in other states to shield themselves from reciprocal sanctioning in Pennsylvania by entering into consent agreements that contain disciplinary sanctions, but admit no wrongdoing.

In *Lyness*, this Court recognized that "due process is fully applicable to adjudicative hearings involving substantial property rights." *Lyness*, 605 A.2d at 1207. The potential clash between the interests of those engaged in a profession to continue the means of their livelihood and those of the public

---

9. It should be noted that Auctioneer Khan did not lose his Pennsylvania license, nor was it restricted at all.

for fair and honest dealing was observed more than a century ago by Mr. Justice Field of the United States Supreme Court:

> It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition.... The interest, or, as it is sometimes termed, the "estate," acquired in them—that is, the right to continue their prosecution—is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud.... The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty.

*Dent v. West Virginia*, 129 U.S. 114, 121–22, 9 S.Ct. 231, 32 L.Ed. 623 (1889). One of the most important functions of government is the exercise of police power to preserve public health, safety and morals. *Gambone*, 101 A.2d at 637. The exercise of this police power activates substantive due process concerns. However, we have recognized that, to that end, the General Assembly may limit the enjoyment of personal liberty and property, as in the arena of professional discipline and licensure, as long as procedural due process requirements are met. *Lyness*, 605 A.2d at 1209–10. In the instant matter, Auctioneer Khan was provided with notice of the charges against him, an opportunity to respond to those charges, and the opportunity to testify and present evidence on his behalf. This is all the procedural due process that is required.

The Commonwealth Court, however, perceived that, because there was no finding of guilt, the Virginia Consent Agreement could not form the basis for disciplinary action in Pennsylvania and that the absence of an admission or finding of guilt violated the due process rights of Auctioneer Khan.

The broad language of Section 20(a)(11) of the Act does not limit its application only to professional discipline imposed after a full hearing and adjudication on the merits, but sweeps broadly enough to include discipline imposed through consent orders and settlement agreements. The statute applies, by its terms, to any discipline imposed by another state on the licensed auctioneer after a finding of guilt.[10] The focus of Section 20(a)(11) centers on the mere fact that a measure of discipline has been imposed on the licensee and does not concentrate on how or why it was imposed. 63 P.S. § 734.20(a)(11).

The Commonwealth Court found that, because the Virginia Consent Agreement specifically stated that, "the execution of this agreement does not constitute an admission of a violation of the Board's regulations by the undersigned[,]" that the agreement "could not constitute the basis to impose sanctions in Pennsylvania." *Kahn*, 785 A.2d at 518. The court essentially concluded that there had been no disciplinary action in Virginia on which to base a reciprocal disciplinary action in this Commonwealth, although it found that the Virginia Consent Agreement still constituted a disciplinary action.

The statutory authorization to take disciplinary action against Pennsylvania license holders on the basis of reciprocal discipline has been repeatedly upheld by the Commonwealth Court. That court has been fairly consistent in concluding that the *fact* of discipline in another state is the only evidence required by statute to support a corresponding disciplinary

---

10. Reciprocal discipline imposed upon the operator's license of a driver convicted in our sister states of driving under the influence of alcohol or drugs is an analogous application of the collateral civil consequence of reciprocal discipline. *See Dept. of Trans. v. McCafferty*, 563 Pa. 146, 758 A.2d 1155 (2000) (mandatory suspension of Pennsylvania driver's license resulting from DUI conviction in another state, pursuant to the Driver's License Compact, constitutes collateral civil consequence).

action by a Pennsylvania licensing board. *See Tandon v. State Bd. of Med.,* 705 A.2d 1338 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 556 Pa. 682, 727 A.2d 134 (1998); *Shoenhair v. State. Bd. of Nurse Examiners,* 74 Pa.Cmwlth. 217, 459 A.2d 877 (1983); *Johnston v. State Bd. of Med. Ed. & Licensure,* 49 Pa.Cmwlth. 9, 410 A.2d 103 (1980). Moreover, this tenet is accepted by other jurisdictions that have decided this issue. *See, e.g., Faulkenstein v. Dist. of Columbia Bd. of Med.,* 727 A.2d 302 (D.C.1999) (reciprocal discipline applied to acupuncturist); *Butts v. State Bd. of Architects,* 911 P.2d 1062 (Wyo.1996) (imposing reciprocal discipline on architect based on settlement agreement in Kentucky); *Marek v. Bd. of Podiatric Med.,* 16 Cal.App.4th 1089, 20 Cal.Rptr.2d 474 (1993) (reciprocal discipline imposed based on entry into consent decree in Nevada, even though no admission of wrongdoing made); *Bhuket v. Missouri State Bd. of Registration for the Healing Arts,* 787 S.W.2d 882 (Mo.Ct. App.1990) (concluding that "disciplinary action" includes any restriction or limitation on license or licensee).

The Commonwealth Court concluded that the Board could not sanction Auctioneer Khan for the disciplinary action and resulting settlement in Virginia because there was no actual finding of fault. We agree with the Commonwealth Court in this instance. The statute specifically states that "when [the Board] finds the licensee to have been *guilty*" of any of the enumerated infractions, the Board may, in its discretion, apply one or more of the listed sanctions. 63 P.S. § 734.20 (emphasis added). The Virginia settlement explicitly states that it was entered into without a finding of fault. Auctioneer Khan successfully challenged the imposition of reciprocal discipline by demonstrating that, pursuant to the test that we articulated previously, "there was no disciplinary action taken in the foreign jurisdiction." Without an actual or constructive finding of guilt, the Board is without authority to impose a reciprocal sanction. While the auctioneer may not relitigate the foreign disciplinary proceeding, the Board likewise may not reassess the guilt or innocence of the professional appearing before it. We hold that the Commonwealth Court did not

err in concluding that the Virginia Consent Agreement was not a disciplinary action that could form the basis for reciprocal disciplinary action in Pennsylvania.

## The Appeal of Abid M. Butt

Auctioneer Butt challenges the authority of Pennsylvania to impose reciprocal discipline, based on the Consent Agreements executed in Virginia and Texas, on the same constitutional grounds argued by Auctioneer Khan. Because we have found no constitutional infirmity in Section 20(a)(11), these challenges are unavailing. Unlike Auctioneer Khan, who negotiated a consent agreement that did not explicitly admit violations, Auctioneer Butt either admitted to the violation or was found guilty by the disciplinary authorities of both Virginia and Texas. As such, the Board permissibly found that it could take reciprocal disciplinary action.

Auctioneer Butt also asserts that the reciprocal revocation of his Pennsylvania license based on the revocation of his Wisconsin license is inappropriate because there is no reciprocity between Pennsylvania and Wisconsin. He contends that there is no potential harm to the Pennsylvania public occasioned by the inaccurate response that he provided to the Wisconsin licensing division. He continues that, at worse, he was guilty of supervisory negligence that would not be repeated and had no impact on Pennsylvanians.

We reiterate that a reciprocal disciplinary forum is not an appropriate venue for relitigating the merits of a foreign disciplinary action. The principal objective of a disciplinary inquiry is to determine whether the individual may properly be permitted to practice his profession in this Commonwealth. Auctioneer Butt's conduct in Wisconsin not only reflected unfavorably upon him, but also upon the integrity of the auctioneering profession. Hence, we find no abuse of discretion by the Board in revoking the license of Auctioneer Butt.

## CONCLUSION

The Board is the agency charged with the authority and responsibility to oversee those engaged in the auctioneering

profession within this Commonwealth, and to determine the competency and fitness of an applicant to practice here. The authority of the Commonwealth to regulate those engaged in this profession is inherent as a sovereign state, and it is a valid exercise of its police power. Thus, it is for Pennsylvania, and Pennsylvania alone, to determine the fitness of an individual to practice within this Commonwealth.

The right of an auctioneer to toil in his profession is not absolute. It must yield to the paramount right of government to protect the public by means that bear a real and substantial relationship to the objective sought. In order to render the imposition of reciprocal discipline improper, an auctioneer must show either that: 1) there was no disciplinary action taken; 2) an appeal from the disciplinary action is pending; 3) the foreign disciplinary proceeding was *ultra vires* or lacking in the fundamentals of due process; or 4) that the misconduct established in the foreign adjudication justifies substantially different discipline in this Commonwealth. In the instant matter, both auctioneers were provided with notice and an opportunity to be heard in Virginia, Maine, Texas, and Wisconsin by the proper licensing authority of each state. Only Auctioneer Khan was able to demonstrate that no disciplinary action was taken in the Virginia proceeding. Neither auctioneer contends that the disciplinary actions taken by Virginia, Maine, Texas, or Wisconsin are currently on appeal. In addition, there was no infirmity of proof because each auctioneer signed a consent agreement ending the disciplinary action. Finally, neither Auctioneer Khan nor Auctioneer Butt has argued or demonstrated that some other discipline, other than that imposed, was more appropriate here.

We, therefore, affirm the determination of the Commonwealth Court in all respects.

Former Chief Justice ZAPPALA did not participate in the consideration or decision of this case.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, dissenting.

I join the majority opinion. With regard to the portion of the Board's order as to auctioneer Khan which was based upon the Virginia consent order, however, I would also credit Khan's argument that the Board's actions are inconsistent with constitutional procedural due process guarantees. In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court stated that a due process inquiry requires consideration of, *inter alia,* the risk that the administrative procedures utilized will erroneously deprive an individual of protected liberty or property interests.

As the majority notes, under the Virginia consent decree, Khan neither admitted to, nor was found guilty of, misconduct. Furthermore, the end result of the Virginia proceedings was not of a nature generally associated with an official determination that the licensee needs discipline: there was no revocation or suspension of the license, or even payment of a fine, but mere reimbursement of administrative costs. The order, then, only provides evidence that allegations of possible misconduct were made and investigated, and that a settlement was reached. Indeed,

> [t]here are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all.

RESTATEMENT (SECOND) OF JUDGMENTS, § 27, cmt. e (1982). *See generally Matternas v. Stehman,* 434 Pa.Super. 255, 267, 642 A.2d 1120, 1125–26 (1994) (observing that a consent order memorializing the parties' agreement provides no basis for determining that any of the underlying issues were settled).

Nevertheless, the Board here applied the same penalty as it does in cases where the out-of-state proceedings resulted in a finding or admission of wrongdoing, or in some form of

discipline associated with wrongdoing. In failing to conform the procedure utilized in sanctioning Khan to the particular circumstances involved, the Board's action raised foundational due process concerns, *see generally Telang v. Commonwealth, Bureau of Prof'l & Occupational Affairs*, 561 Pa. 535, 540, 751 A.2d 1147, 1150 (2000) (observing that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," but is rather " 'flexible and calls for such procedural protections as the particular situation demands' " (quoting *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902)), and, in my view, created an undue risk of an erroneous deprivation.

Consequently, both for this reason and for the reasons expressed by the majority, I agree that it was improper for the Board to impose discipline upon Khan based upon the Virginia consent order. In the circumstances involving Khan, I believe there was, in fact, an undue risk of erroneous deprivation.