# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tamer Ibrahim Hassan Ahmed,     :
           Petitioner     :
    :  No. 567 C.D. 2024
        v.     :
    :  Submitted: July 7, 2025
State Board of Massage Therapy,     :
           Respondent     :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                         **FILED: October 20, 2025**

Tamer Ibrahim Hassan Ahmed (Petitioner), *pro se*, has petitioned this Court to review the amended final adjudication and order issued by the State Board of Massage Therapy (Board) for the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs (Commonwealth) on April 15, 2024, which concluded that Petitioner had violated Section 9(a)(7) of the Massage Therapy Law by engaging in sexual misconduct.[1] Accordingly, the Board revoked Petitioner's massage therapist license and imposed sanctions, including a civil penalty of $10,000 and the cost of investigation of $1,468.17. Upon careful review, we affirm.

---

[1] Act of October 9, 2008, P.L.1438, 63 P.S. § 627.9(a)(7). Section 9(a)(7) prohibits violations of Board regulations, which provide in relevant part that a massage therapist may not "[e]ngage in sexual harassment, sexual impropriety, sexual violation or sexual abuse." 49 Pa.Code § 20.42(b)(6). We may colloquially refer to this prohibited conduct as sexual misconduct.

# I. BACKGROUND[2]

Petitioner was licensed to practice as a massage therapist in the Commonwealth of Pennsylvania. In July 2021, Petitioner was hired by Dr. Gregory Sommer at Community Chiropractic in York.[3] B.D. began receiving chiropractic services from Dr. Sommer in January 2021 for injuries sustained during a home invasion, where she was physically and sexually assaulted. In addition to chiropractic treatment, B.D. also received massage therapy at Community Chiropractic. B.D. had seven massage therapy sessions with Petitioner between July 2021 and August 2021.

On August 21, 2021, while B.D. was laying on a massage table under a sheet face up and naked, Petitioner began messaging B.D.'s lower abdomen down to her pubic bone and touched her underneath the sheet in a manner suggesting that he was attempting to sexually stimulate her.[4] Petitioner stopped after B.D. raised her hand and said, "okay," then Petitioner worked on B.D.'s neck and shoulders before ending the massage. Afterwards, B.D. went to the front desk, interrupted Dr. Sommer from receiving payment from another client, and told him she was late for something and needed to leave. Dr. Sommer took B.D.'s payment, and B.D. left. When B.D. returned home shortly thereafter, she called a friend, Becky Overson, who is a social worker living in Oregon, to recount the incident. Later, Overson

---

[2] Unless stated otherwise, we adopt this background from the Board's decision, which is supported by substantial evidence of record. *See* Am. Final Adjudication & Order, 4/15/2024.

[3] Dr. Sommer is a licensed chiropractor and owner of Community Chiropractic.

[4] Petitioner had one hand on B.D.'s breast and another hand touching her vagina and clitoris. *See* Am. Final Adjudication, 4/15/2024, Findings of Fact Nos. 21-25.

called Dr. Sommer to discuss the occurrence, and B.D. filed a report with the local police department later that night.[5]

On September 2, 2021, Detective Stephen Lebo from the Northern York County Regional Police Department commenced a criminal investigation into the reported incident, interviewing B.D., Overson, Dr. Sommer, and Petitioner.[6] Detective Lebo also reviewed the case with an Assistant District Attorney, who ultimately decided not to file criminal charges against Petitioner.

On June 10, 2022, the Bureau of Professional and Occupational Affairs filed a one-count order to show cause (OTSC) against Petitioner,[7] alleging that Petitioner had engaged in sexual misconduct in violation of Board regulations. Petitioner filed an Answer denying the allegation and requested a hearing on the OTSC. *See* Answer to Am. Order to Show Cause, 7/12/22; Req. for Hr'g, 7/12/22.

A formal administrative hearing was held on December 23, 2022. During the hearing, Petitioner testified on his own behalf and specifically denied the allegations. Petitioner also presented testimony from Detective Lebo. For its part, the Commonwealth presented testimony from B.D., Overson, and Investigator William King. Following the hearing and post-hearing briefing from both parties, the hearing examiner issued a proposed adjudication dismissing the OTSC. *See* Proposed Adjudication & Order, 9/18/23. Therein, the examiner concluded that the

---

[5] The following Monday, Dr. Sommer called B.D.; however, they did not discuss details of the incident. B.D. called Dr. Sommer that Wednesday to request a refund for her massage on Friday, August 21, 2021. Dr. Sommer issued a refund to B.D.

[6] The Board also noted that Detective Lebo failed to speak to two potential witnesses, failed to visit Community Chiropractic, and failed to collect B.D's massage therapy records and Dr. Sommer's notes. *See* Am. Final Adjudication & Order at 10.

[7] The Commonwealth filed an Amended OTSC on September 20, 2022, to include the cost of investigation among the factual allegations and penalties. *See* Am. Order to Show Cause, 9/20/2022, at 3-4. Petitioner disputed the cost averments in the Amended OTSC. *See* Answer to Am. Order to Show Cause, 12/8/22, at 3 (unpaginated).

Commonwealth had failed to prove by a preponderance of the evidence that Petitioner had engaged in sexual misconduct. *Id.*

On September 22, 2023, the Board notified the parties of its intention to review this matter and that it "may substitute its findings for those of the hearing examiner, and/or may impose a greater or lesser sanction than that imposed by the hearing examiner, . . . ." *See* Notice of Intent to Rev., 9/22/23. In response, both parties filed supplemental briefs addressing the proposed adjudication.

Ultimately, the Board revisited the witnesses' credibility and found that Petitioner was not a credible witness, because his testimony was not reasonable, consistent, or accurate, but found all other witnesses to be credible. Accordingly, the Board sustained the allegations, revoked Petitioner's massage therapist license, and imposed a civil penalty of $10,000 and the costs of the investigation of $1,468.17. The Board explained that the sanctions were imposed to "to protect the public, to discourage [Petitioner], and others, from engaging in similar conduct in the future, and to maintain the public's faith in the profession." Petitioner timely petitioned this Court for review.[8]

## II. ISSUES

Petitioner has identified two issues that we will consider on appeal. First, he challenges the Board's findings and credibility determinations. Pet'r's Br. at 7-11. Second, Petitioner disputes the penalty imposed by the Board.[9] *Id.* at 8.

---

[8] The Board amended its adjudication to clarify that Board member Jessica Nelson had recused from the deliberations in this matter. *See* Am. Final Adjudication & Order, 4/15/24, at 3 n.3.

[9] We decline to address several bald assertions made by Petitioner that lack support in the record and which Petitioner has failed to develop with legal argument. *See Ruiz v. Unemployment Comp. Bd. of Rev.*, 911 A.2d 600, 605 n.5 (Pa. Cmwlth. 2006) (finding that when issues are not properly raised and developed in a brief, or when the brief is inadequate or defective because an issue is not adequately developed, this Court will not consider the merits of the issue.); Pa.R.A.P.

Petitioner asks this Court to set aside the civil penalty, reinstate his license, expunge his record, and rectify any adverse credit references. *Id.* at 13.

In response, the Board argues that its adjudication was supported by substantial evidence and that the Board acted within its discretion when it revoked Petitioner's license, levied a civil penalty, and imposed the costs of investigation. Resp't's Br. at 10-17.

### III. DISCUSSION[10]

"[T]he right to practice a chosen profession is subject to the lawful exercise of the power of the State to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations." *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004). The legislature has charged the Board with the responsibility and authority to oversee the

---

2119(a). For example, Petitioner asserts that the Board's attorney, Heather McCarthy exhibited "aggressive behavior" that "strongly suggests bias" against his race, religion, and gender. Pet'r's Br. at 7. Additionally, according to Petitioner, McCarthy repeatedly told him to "shut up" when Petitioner sought to clarify statements and understand legal language. *Id.* However, our review of the record does not support these bald assertions. *See* Notes of Testimony (N.T.), 12/23/2022 at 192 – 207. Similarly lacking record support or legal development, Petitioner asserts a violation of his right to due process because the Board failed to provide him with a transcript of the hearing. *See id.* at 4, 7. Finally, Petitioner asserts that the Board failed to recognize or grant him a presumption of innocence. *See id.* at 4, 9. A presumption of innocence does not arise in civil proceedings. *See Commonwealth v. Bonomo*, 151 A.2d 441, 445 (Pa. 1959) (explaining that a presumption of innocence arises only in criminal cases because "[i]t represents the law's humane approach to the solution of a dispute which may result in the loss of life or liberty").

[10] Our review is limited to consider whether there has been "a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion." *See Kirkpatrick v. Bureau of Prof'l & Occupational Affairs, State Bd. of Barber Exam'rs*, 117 A.3d 1286, 1290 n.10 (Pa. Cmwlth. 2015) (quoting *Blumenschein v. Hous. Auth. of Pittsburgh*, 109 A.2d 331, 334 (1954)). Thus, "[i]n the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the agency's action or into the details or manner of executing agency action." *Id.* (quoting *Slawek v. Com., State Bd. of Med. Educ. & Licensure*, 586 A.2d 362, 365 (Pa. 1991)).

5

profession of massage therapy and to regulate its professionals. *See Barran v. State Bd. of Med.,* 670 A.2d 767,767 (Pa. Cmwlth. 1996), *appeal denied*, 679 A.2d 230 (Pa. 1996). As such, this Court is extremely deferential to disciplinary decisions by a professional board. *See King v. Bureau of Prof'l & Occupational Affairs, State Bd. of Barber Exam'rs*, 195 A.3d 315, 326 (Pa. Cmwlth. 2018).

In professional licensing matters, the Commonwealth must prove its case by a preponderance of the evidence. *See Stoner v. Bureau of Prof'l and Occupational Affairs,* 10 A.3d 364, 371–72 (Pa. Cmwlth. 2010), *appeal denied*, 34 A.3d 834 (Pa. 2011). This is "the lowest degree of proof recognized in the administration of justice[.]" *Se-Ling Hosiery v. Margulies*, 70 A.2d 854, 856 (Pa. 1950). Our Supreme Court has described proof by the preponderance of the evidence as evidence that "is so much more weighty in probative value than evidence offered in opposition to it that it tips the scales . . . ." *Id.* Or, stated differently, "it is tantamount to a more likely than not standard." *Com. v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 555 (Pa. 2005) (cleaned up).

Furthermore, it is well established that the Board is the ultimate fact finder and may accept or reject the testimony of any witness in whole or in part, and this Court is bound by the Board's credibility determinations. *See Gleeson v. State Bd. of Med.*, 900 A.2d 430, 435 (Pa. Cmwlth. 2006). This Court may not re-weigh the evidence or judge the credibility of witnesses. *Id.*

Here, the Board did not err in concluding that the Commonwealth met its burden by a preponderance of the evidence, nor in concluding that Petitioner was not a credible witness, and its decision is supported by substantial evidence. Petitioner's testimony was contradicted by B.D.'s treatment records and marked by

6

several inconsistencies.[11]    On the other hand, B.D.'s testimony of Petitioner touching her breast and vagina in a manner suggesting he was attempting to sexually stimulate her during the massage therapy session on August 20, 2021, was consistent with the account she gave Overson shortly after the incident, and what she reported to Detective Lebo during an interview on September 2, 2021. *See* N.T., 12/23/22, 35-42, 107-08, 126, 130, 137-40.

After concluding that Petitioner was not a credible witness and crediting all other witnesses, it gave Petitioner's testimony less evidentiary weight, which is well within the Board's discretion as the ultimate fact finder.[12]  *Id.* at 22;

---

[11] Specifically, Petitioner testified that he had 3,000 clients, then on cross-examination said he performed 3,000 massage therapy sessions. *Compare* N.T., 12/23/22, at 169-70, 172, 191 *with*, N.T., 12/23/22, at 193.  Petitioner testified that B.D. cried without reason the entire second half a session that fell on her birthday; however, Petitioner's session notes indicate that B.D. cried but calmed down.  *Compare* N.T., 12/23/22, at 176, 194 *with*, N.T., 12/23/22, Exhibit C-4, p.5. Petitioner testified that he gave B.D. massages every other week, however, records revealed that the massages were weekly.  *Compare* N.T., 12/23/22, at 195 *with*, N.T., 12/23/22, Exhibit C-4. Petitioner testified to never feeling indication of pain, soreness, or tightness in B.D.'s muscles during massages; however, B.D.'s treatment records reveal that Petitioner documented tightness in several muscle groups.  *Compare* N.T., 12/23/22, at 189-90, 205-06 *with,* N.T., 12/23/22, Exhibit C-4.  Petitioner also testified that when he asked B.D. to stop tipping him after their third session because she was allegedly tipping him an excessive amount, Petitioner initially claimed that B.D. became less talkative in the following sessions but later testified that they both became less talkative. *Compare* N.T., 12/23/22, at 174-75, 178 *with*, N.T., 12/23/22, 197-98, 205.

[12] Before this Court, Petitioner suggests that the Board found B.D. credible because she is an affluent, white, native English-speaker who was "coached" by a "skilled, articulate white female attorney," in comparison to Petitioner who is a "dark Muslim immigrant" who speaks English as a third language. *See* Pet'r's Br. at 9.  This argument is meritless.  The Board reached its credibility determinations after thoroughly analyzing the consistency and reasonableness of testimonies, witnesses' ability to perceive and remember the incident, witnesses' interests in the outcome of the case, and additional evidence contracting witness testimony.  *See e.g.,* Am. Final Adjudication & Order, 4/15/24, at 15 (noting that "B.D. was able to testify with particularity regarding the events that occurred without referring to notes or reading prior transcripts.").  There is no discussion or implication of race, religion, nationality, or socioeconomic status affecting the Board's credibility analysis. *See id.* at 14-22.  Nor are there indications that B.D. was "coached" while delivering her testimony. *See* N.T., 12/23/22, at 26-65, 95-98.

7

*see also Gleeson*, 900 A.2d at 435. The Board held that the Commonwealth proved through evidence weighing slightly more than the opposing evidence that Petitioner intentionally attempted to sexually stimulate a patient receiving massage services. *Id.* at 24, 37; *Se-Ling Hosiery*, 70 A.2d at 856. Such conduct violates the Act and the Board's regulations, which allows the Board to impose sanctions. *See* 49 Pa. Code § 20.42(b)(6); 63 P.S. § 627.9(a)(7).

Petitioner also contends that the Board imposed a penalty that is disproportionate and discriminatory when balanced against Petitioner's unblemished record, the loss of his livelihood, and the absence of any criminal convictions. *See* Pet'r's Br. at 8.

When imposing sanctions on an active license suspension, the Board's decision is "self-evident" and not a flagrant abuse of discretion if it provides a thorough explanation for the sanctions that considers mitigating factors and its duty to discourage similar misconduct. *Slawek v. Com., State Bd. of Medical Educ. & Licensure*, 586 A.2d 362, 366 (Pa. 1991); *see also Tumpati v. State Bd. of Med.* (Pa. Cmwlth., No. 1361 C.D. 2023, filed Nov. 4, 2024), 2024 WL 4664093, at *3 (finding no flagrant abuse of discretion by the Board for imposing sanctions after it explained "in painstaking and graphic detail" how a surgeon failed to meet the standard of care when performing genital examinations on three female patients.).[13] Additionally, the Board has authority to levy a civil penalty up to $10,000 per violation on a licensee who violates a provision of its regulations, and may, as part of imposed sanctions, include the costs of investigation. *See* 63 Pa.C.S. § 3108(b)(4),(5).

---

[13] *Tumpati* is an unreported opinion of this Court. Per our Internal Operating Procedures, this Court's unreported memorandum opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Here, the Board emphasized that a licensee intentionally attempting to sexually stimulate a patient receiving massage therapy is an infraction that "cannot go unpunished." *See* Am. Final Adjudication & Order, 4/15/24, at 37. The Board noted that patients, especially those like B.D., who seek services after experiencing a sexual assault should not be "revictimized" but "treated with respect and dignity." *Id.* Further, the Board discussed the need to impose sanctions "to protect the public, to discourage [Petitioner], and others, from engaging in similar conduct in the future, and to maintain the public's faith in the profession." *Id.* at 37-38. The Board also declined to credit any mitigating evidence offered by Petitioner. *Id.* at 37. Accordingly, in addition to revoking Petitioner's license, it imposed a civil penalty of $10,000 and the cost of investigation of $1,468.17 to accomplish these goals. *Id.* at 38. Therefore, the Board's decision was sufficiently explained and "self-evident," and we discern no flagrant abuse of discretion in the Board's imposition of sanctions. *See Slawek,* 586 A.2d at 366; *Tumpati*, 2024 WL 4664093, at *3.

Accordingly, we affirm.

**LORI A. DUMAS, Judge**

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tamer Ibrahim Hassan Ahmed,     :
         Petitioner         :
                       :    No. 567 C.D. 2024
        v.              :
                       :
State Board of Massage Therapy,    :
         Respondent       :

## **O R D E R**

AND NOW, this 20th day of October, 2025, the order issued by the State Board of Massage Therapy on April 15, 2024, which revoked Tamer Ibrahim Hassan Ahmed's massage therapist license and imposed sanctions, including costs and a civil penalty, is AFFIRMED.

 

**LORI A. DUMAS, Judge**